**Paul L. GABBERT, Plaintiff–Appellant,**

v.

**David CONN; Carol Najera; Leslie Zoeller; Elliot Oppenheim, Defendants–Appellees.**

No. 95–56610.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1997.

Decided Dec. 8, 1997

Michael J. Lightfoot, Talcott, Lightfoot, Vandevelde & Sadowsky, Los Angeles, CA, for plaintiff–appellant.

Robert S. Wolfe and Steven J. Renick, Manning, Marder & Wolfe, Los Angeles, CA, for defendants–appellees David Conn and Carol Najera.

Scott D. MacLatchie and Priscilla F. Slocum, Franscell, Strickland, Roberts & Lawrence, Pasadena, CA, for defendants–appellees Leslie Zoeller and Elliot Oppenheim.

Before: PREGERSON and HAWKINS, Circuit Judges, and WEINER,* District Judge.

MICHAEL DALY HAWKINS, Circuit Judge.

The prosecution and defense of criminal allegations produce ample opportunity for adversarial conflict. Without even looking for trouble, the interests of prosecution and defense can collide. This appeal demonstrates what can happen when one side steers those forces into direct and obvious conflict. Here, the prosecution's desire to gather evidence for the re-trial of a high-profile murder case runs directly into a defense attorney's right to consult with his client. The result is not a pretty picture. It is made all the worse because it appears to have been an entirely avoidable collision.

The case comes to us in the form of a civil rights damage action. Attorney Paul L. Gabbert ("Gabbert") wishes to pursue the action against two deputy district attorneys, a police officer, and a court-appointed special master. He alleges violations of his Fourth and Fourteenth Amendment rights arising out of a search of his person and effects executed just moments before his client entered a grand jury room. The district court dismissed Gabbert's Fourth Amendment claim and granted summary judgment for the defendants on his Fourteenth Amendment claims. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We hold that Gabbert had a clearly established right to pursue his profession without undue and unreasonable governmental inter-

ference and that no reasonable prosecutor or police officer could have believed that the worst of this conduct was lawful. We also hold that a second search of Gabbert, which violated both state law and the face of the warrant, amounted to a warrantless and therefore unreasonable search.

## I. FACTS

Gabbert represented Traci Baker ("Baker"), a defense witness in the first murder trial of Lyle and Erik Menendez.[1] After the close of evidence in that trial, Los Angeles County Deputy District Attorneys David Conn ("Conn") and Carol Najera ("Najera") learned that Lyle Menendez had written a letter to Baker in which he allegedly instructed her to testify falsely.

Armed with this information, Conn obtained a subpoena directing Baker to testify before a grand jury and produce any correspondence that she had received from Lyle Menendez. Beverly Hills Police Department Detective Leslie Zoeller ("Zoeller"), an investigating officer in the Menendez case, served that subpoena on Baker at Gabbert's law office.

The next day, Gabbert sought to file a motion to quash that portion of the subpoena requiring Baker to produce correspondence from Menendez. A Los Angeles Superior Court Judge declined to accept Gabbert's motion for filing and also denied his application for an order shortening time for the hearing on the motion to quash.

At about this same time, Conn, Najera, and Zoeller obtained a warrant to search Baker's apartment for any Menendez correspondence. When presented with the warrant, Baker informed Detective Zoeller that she had given any correspondence from Lyle Menendez to Gabbert. Zoeller relayed this information to Conn and Najera.

Three days later, Gabbert accompanied Baker to her scheduled grand jury appearance. As Gabbert and Baker walked into the building where the appearance was to take

---

* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The events at issue in this appeal occurred during jury deliberations of the first Menendez trial, which ultimately resulted in two hung juries.

place, Conn approached Gabbert and asked him if he had brought the "documents" with him. Conn was referring to the Menendez correspondence, but Gabbert thought Conn was referring to Gabbert's motion to quash and accompanying documents.

Based on Gabbert's response, Conn decided to obtain a warrant to search Gabbert and directed Detective Zoeller to secure it. Under California law, the search of an attorney or law office must be conducted by a court-appointed special master. In this instance, Elliot Oppenheim ("Oppenheim"), a retired lawyer, was authorized to search Gabbert and his effects.

As Baker and Gabbert were waiting outside the grand jury room, Zoeller, at Conn's direction, served Gabbert with the search warrant. At Gabbert's request, the search took place in a private room adjacent to the grand jury room. Before he was actually searched, Gabbert gave Oppenheim two photocopied pages of a three-page letter from Lyle Menendez to Baker, informing Oppenheim that this was the only document on his person or in his effects that constituted correspondence between Menendez and Baker. Oppenheim proceeded to search Gabbert's files, including at least two files that clearly involved clients other than and unrelated to Baker. When Gabbert protested, Oppenheim proceeded to review the files anyway. Oppenheim also examined the contents of Gabbert's briefcase, including his calendar, wallet, dictaphone, eyeglass case, and notepad.

Within minutes of the search warrant was being executed on Gabbert, Najera, also acting at Conn's direction, called Baker before the grand jury and began to question her. In response to the first question, Baker asked to leave the grand jury room to consult with her attorney. Gabbert, of course, was being searched at this very moment.

Conn's secretary located Gabbert in the room where he was being searched and informed him that his client needed to speak with him. Gabbert, apparently unaware that his client was immediately outside the room, declined to leave. Instead he informed the secretary that the prosecution, which at least in his mind had created the problem, would

have to simply delay questioning Baker further while the search was being carried out.

Baker then returned to the grand jury room and, reading off a card she had prepared in advance, asserted her Fifth Amendment privilege against self-incrimination on "the advice of counsel." In response to a second question from Najera, Baker again asked to speak with her attorney and left the room. Gabbert was nowhere to be seen. Baker waited in the hallway until a bailiff appeared, telling her to return to the grand jury room where she once again asserted her Fifth Amendment privilege.

Conn thereupon moved to hold Baker in contempt for failing to produce the documents subject to the subpoena, and the grand jury took a break. Conn, Najera, and Zoeller, with Baker in tow, then joined Oppenheim and Gabbert in the room where Oppenheim had just searched Gabbert. Oppenheim informed Conn that Gabbert did not possess the materials subject to the search warrant, but that Gabbert's effects did not contain privileged matters. Gabbert disputed this statement and informed Conn that he had files of other clients as well as privileged matters concerning Baker (e.g., Gabbert's notes of his interview with Baker). Conn thereupon informed Gabbert that Detective Zoeller would conduct a follow-up search of Gabbert's person and effects. Gabbert neither consented to nor resisted this search which was carried out by Zoeller with Conn and Najera looking on. Oppenheim took no part in this second search.

## II. PROCEDURAL HISTORY

Gabbert contends his Fourth Amendment right to be free from unreasonable searches and seizures and his Fourteenth Amendment right to practice his profession without unreasonable governmental interference were both violated. The district court dismissed his Fourth Amendment claims, finding that Zoeller and Oppenheim had absolute immunity and Conn and Najera had qualified immunity. The district court found that Zoeller, as a public officer executing a court order, had quasi-judicial immunity and that Oppenheim was immune from suit as a judicial

officer performing a judicial function. The district court declined to give the deputy district attorneys absolute immunity because it found they were acting as investigators, not advocates, during the search and grand jury proceeding. Finally, the district court denied the defendants' motion to dismiss Gabbert's Fourteenth Amendment claims.

The district court denied Gabbert's motion for leave to amend his complaint to include a state law claim under California Penal Code § 1524(c), the statute regulating the search of lawyers or law offices. The district court declined to exercise supplemental jurisdiction over a civil claim based on a violation of Cal.Penal Code § 1524, finding that it presented a novel question of state law which would substantially predominate over Gabbert's remaining Fourteenth Amendment claims.

The defendants moved for summary judgment on Gabbert's Fourteenth Amendment claims. The district court granted summary judgment for Conn and Najera based on qualified immunity and for Zoeller and Oppenheim based on absolute immunity.

## III. STANDARD OF REVIEW

Both a dismissal for failure to state a claim and a grant of summary judgment on the basis of qualified immunity in a 42 U.S.C. § 1983 action are reviewed de novo. *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1043 (9th Cir.1996) (summary judgment); *Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir.1995) (Fed. R. Civ.Proc.12(b)(6)); *Neely v. Feinstein*, 50 F.3d 1502, 1507 (9th Cir.1995) (qualified immunity in § 1983 action). These same authorities teach that we must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. This court reviews a denial of leave to amend a complaint for an abuse of discretion. *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 888 (9th Cir.1996).

## IV. ANALYSIS

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir.1989).

Absolute immunity, a total defense at the outset to a civil rights action, is afforded to those officials performing special functions that require independence and fearless performance. *See Burns v. Reed*, 500 U.S. 478, 484–85, 111 S.Ct. 1934, 1938–39, 114 L.Ed.2d 547 (1991). An official seeking absolute immunity from a § 1983 action bears the burden of showing that such immunity is applied for the function at issue. *See id.* at 486, 111 S.Ct. at 1939. There is a presumption that qualified rather than absolute immunity is generally sufficient to protect government officials. *See id.* Absolute immunity is given sparingly. *See id.*

The qualified immunity doctrine protects government officials from civil liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Analysis of a qualified immunity claim involves three steps: (1) identifying the specific right allegedly violated; (2) determining whether the right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and (3) determining whether a reasonable public officer could have believed that the particular conduct at issue was lawful. *See Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir.1996); *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1363–64 (9th Cir.1994).

When the underlying facts are undisputed, the district court must decide whether a public officer is entitled to qualified immunity "at the earliest possible point in the litigation." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993) (interpreting

*Hunter v. Bryant,* 502 U.S. 224, 227–28, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991)).

## A. FOURTEENTH AMENDMENT CLAIM

### 1. Immunity of the Prosecutors

#### a. Absolute Immunity

Conn and Najera claim that absolute immunity protects them from liability for Gabbert's § 1983 claims. Prosecutors are entitled to absolute immunity from suit under § 1983 for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995–96, 47 L.Ed.2d 128 (1976). The law affords absolute immunity to a prosecutor for performing the functions of a prosecutor, rather than simply for having the status of prosecutor. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615–16, 125 L.Ed.2d 209 (1993).

Prosecutors are entitled to absolute immunity for initiating and pursuing prosecution. *See Imbler,* 424 U.S. at 431, 96 S.Ct. at 995–96. This immunity extends to prosecutorial conduct before grand juries. *See Burns,* 500 U.S. at 490 n. 6, 111 S.Ct. at 1941 n. 6. Prosecutors are not protected by absolute immunity, however, when they act as investigators rather than as advocates. *See Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615–16. A prosecutor performing functions generally performed by detectives or police officers loses entitlement to absolute immunity but is eligible for the qualified immunity usually accorded those actions. *See id.*

Gabbert claims Conn and Najera violated his constitutional rights by their timing of the service of the search warrant and directing the second search. The district court found that Conn and Najera acted as investigators, not advocates, by participating or directing the pre-indictment gathering of evidence. The district court's determination in this regard is on solid ground, as the prosecutors here performed activities more associated with police functions: they served a search warrant upon Gabbert's client at her residence, directed a police officer to obtain a search warrant for Gabbert, were present when the police officer served the warrant to

Gabbert, introduced Gabbert to the special master, informed Gabbert of the need for a second search, were present for the second search, and viewed Gabbert's documents during the search. Thus, the district court properly found that prosecutors Conn and Najera were not entitled to absolute immunity for their actions.

#### b. Qualified Immunity

Alternatively, Conn and Najera claim they are entitled to qualified immunity. The threshold question in resolving such a claim is whether the plaintiff has identified a specific right allegedly violated by government actors. *See Newell,* 79 F.3d at 117. "Due process violations must be particularized before they can be subjected to the clearly established test." *Id.* (quoting *Kelley v. Borg,* 60 F.3d 664, 667 (9th Cir.1995)); *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1319 (9th Cir.1995). Gabbert's claim is specific: the Fourteenth Amendment protects his right to practice his profession without undue and unreasonable governmental interference.

The Fourteenth Amendment protects "the right of the individual ... to engage in any of the common occupations of life." *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972); *see Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56, 65 n. 4 (9th Cir.1994) ("[P]ursuit of an occupation or profession is a protected liberty interest."). Such a right is both a liberty and property right protected from state deprivation or undue interference. *See Keker v. Procunier,* 398 F.Supp. 756, 760 (E.D.Cal.1975) (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923)); *see Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) (right to hold specific private employment and to follow chosen profession free from unreasonable governmental interference protected by Fifth Amendment); *see also In re Griffiths,* 413 U.S. 717, 722–27, 93 S.Ct. 2851, 2855–58, 37 L.Ed.2d 910 (1973) (state requirement of United States citizenship violates attorney's right to practice law). Because the Fourteenth Amendment protects an individual's

right to practice a profession free from undue and unreasonable state interference, Gabbert has identified a specific right allegedly violated.[2]

Having identified the specific right at issue, we turn to whether that right was clearly established at the time the prosecutors allegedly interfered with that right. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability." *Romero v. Kitsap County,* 931 F.2d 624, 628 (9th Cir.1991) (quoting *Todd v. United States,* 849 F.2d 365, 368–69 (9th Cir.1988)). The plaintiff bears the burden of showing that the right allegedly violated was clearly established. *See Collins v. Jordan,* 110 F.3d 1363, 1369 (9th Cir.1996).

■■■■ A right is clearly established "[i]f the only reasonable conclusion from binding authority [was] that the disputed right existed." *Blueford v. Prunty,* 108 F.3d 251, 255 (9th Cir.1997). "The contours of the right must be sufficiently clear that [at the time the allegedly unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Mendoza v. Block,* 27 F.3d 1357, 1361 (9th Cir.1994) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039). For a right to be clearly established, "the very action in question" need not "ha[ve] previously been held unlawful"; instead, the "unlawfulness must be apparent" in light of pre-existing law. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. "Thus, when the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Mendoza,* 27 F.3d at

1361 (quoting *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir.1993)); *see Backlund v. Barnhart,* 778 F.2d 1386, 1390 (9th Cir.1985) ("Certainly ... [§ 1983 plaintiffs] need not always produce binding precedent.... There may be cases of conduct so egregious that any reasonable person would have recognized a constitutional violation.").

■■■■ The unusual facts of this case preclude "the very action in question" to be clearly established in our case law. Nevertheless, long-standing precedent establishes the importance of the attorney-client relationship during a client's grand jury testimony. A witness has an absolute duty to answer all questions before a grand jury. *See United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 1778–79, 48 L.Ed.2d 212 (1976). This absolute duty is subject to limitation: the witness is "free at every stage to interpose his constitutional privilege against self-incrimination." *See id.* at 584, 96 S.Ct. at 1780. To assist the witness in asserting this privilege, a witness has the right to consult with her attorney outside the grand jury room. *Id.* at 581, 96 S.Ct. at 1778–79. This right to assistance is clearly established in this and other circuits. *United States v. Plache,* 913 F.2d 1375, 1380 (9th Cir.1990) (witness has "a right to consult with an attorney waiting outside the grand jury room during the proceedings"); *United States v. Schwimmer,* 882 F.2d 22, 27 (2d Cir.1989) (same); *In re Grand Jury Proceedings,* 859 F.2d 1021, 1024 (1st Cir.1988) (same). The witness's clearly established right to assistance, however, cannot be exercised if government officials unnecessarily interfere with an attorney's ability to provide that advice.

■■■ A constitutional right may be clearly established "both by common sense and by precedent." *Newell,* 79 F.3d at 117. Both clearly establish that the right to practice a profession necessarily includes the right to

---

**2.** The prosecutors seek to characterize Gabbert's claim as one for lost professional opportunities or injury to his professional reputation. Injury to a professional reputation is not a liberty interest protected by the Fourteenth Amendment. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). Gabbert's claim is

that the prosecutors' conduct directly interfered with his ability to practice his profession. Specifically, he contends that the prosecutors' conduct prevented him from freely rendering legal assistance to his client whenever she chose to seek his advice regarding her grand jury testimony. Thus, those cases failing to find a liberty interest in a loss of reputation are inapposite.

practice according to the highest standards of that profession. There is no right more central to that notion than the right to maintain the privacy and freedom from intrusion essential to the attorney-client relationship. *See Damron v. Herzog,* 67 F.3d 211, 214 (9th Cir.1995); *DeMassa v. Nunez,* 770 F.2d 1505, 1506–07 (9th Cir.1985); *see also* Model Rules of Professional Conduct Rule 1.6. Common sense necessarily leads to the conclusion that an attorney has the right to practice his profession in privacy and freedom from unreasonable intrusion by "waiting outside the grand jury room" during his client's testimony. *Plache,* 913 F.2d at 1380. Therefore, we hold that Gabbert had the clearly established right to practice law free from undue and unreasonable governmental interference.

 The final step in a qualified immunity analysis is whether a reasonable official could have believed the conduct at issue was lawful under that clearly established law. *See Mendoza,* 27 F.3d at 1362. A defendant must show that a reasonable officer could have believed that the conduct was lawful. *See Collins,* 110 F.3d at 1369. We decide whether the officials' actions were objectively reasonable under the facts and circumstances, without regard to their underlying intent or motivation. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872–73, 104 L.Ed.2d 443 (1989).

Here, two streams of events collided. The prosecutors were poised with a search warrant for Gabbert's effects to be carried out by a special master pursuant to California procedure. Baker, as required by her grand jury subpoena, was present and prepared to appear before the grand jury. The prosecutors were in control of both events: they controlled the timing of the execution of the search warrant on Gabbert and his client's grand jury appearance. The only apparent reason to have both occur at the same time was the prosecutors' desire to prevent Gabbert from communicating with his client.

There was a clear and obvious path that, if followed, would have allowed the prosecutors to both execute the search warrant as well as permit Baker to appear before the grand jury with Gabbert available for consultation. The prosecutors could have simply delayed Baker's grand jury appearance while the special master searched Gabbert and his files. Baker would have had no right to be present when Gabbert was searched and therefore could have been kept comfortably out of harm's way. Alternatively, the prosecutors could have delayed the search of Gabbert until his client was finished testifying before the grand jury.

The prosecutors chose instead to pursue a path that put these two events into direct conflict, executing the search warrant on Gabbert at almost the exact time Baker was being haled into the grand jury room.[3] The plain and intended result was to prevent Gabbert from consulting with Baker during

---

3. We have had occasion to describe the "model of government sensitivity to the special privacy interests that are implicated when a law firm's files must be searched" pursuant to a warrant. *See In re Grand Jury Subpoenas Dated December 10, 1987,* 926 F.2d 847, 858 (9th Cir.1991).

From the time the warrants were requested, the officers took considerable care in minimizing the intrusion into the privacy of the Doe Four law firm. *The Government intentionally timed the search for a time of day when it would least disrupt the law firm's activities.* The Government also suggested to the issuing court that it impose any special restrictions on the execution of the warrants it deemed appropriate in light of the facts that the files in a law office would be searched.

The execution of the warrants, likewise, shows considerable concern for the privacy interests of the law firm and its clients. *At the main office, the agents delayed the search while law firm attorneys negotiated with the United States Attorney as to the best way to meet the Government's need for these documents.* An agreement was reached that the officers would not conduct a search of the files. Instead, law firm personnel searched the files and identified the relevant documents. These documents were sealed and turned over to the district court.

At the satellite office, the officers seized the files bearing the names of the persons identified in the warrant, without reviewing the contents. These documents were sealed and delivered to the district court.

As the result of these precautions, the privacy interests of the persons subject to the search were fully protected.

*Id.* (emphasis added). Although we do not prescribe a specific method for executing a search warrant on a lawyer or law office, we note that prosecutors Conn and Najera miserably failed to achieve the cooperative attitude exhibited in this model.

her grand jury appearance.[4] These actions were not objectively reasonable, and thus the prosecutors are not protected by qualified immunity from answering Gabbert's Fourteenth Amendment claim.[5]

Our holding does not provide a basis for a private attorney to resist legitimate criminal procedure and litigation devices—such as search warrants or discovery requests—in cases against the government. Nor does our holding transform every violation of a client's constitutional rights into a corresponding violation of an attorney's constitutional rights. Rather, our holding is narrow: a state government violates an attorney's Fourteenth Amendment rights when its officers unduly and unreasonably interfere with the attorney's right to practice his profession by preventing the attorney from offering legal assistance to the client in the very matter and at the very moment for which the lawyer was retained.

### 2. Immunity of the Detective

■ Detective Zoeller claims absolute immunity from Gabbert's § 1983 claim for violating his Fourteenth Amendment rights. Zoeller relies on *Coverdell v. Department of Social and Health Servs.*, 834 F.2d 758 (9th Cir.1987), for the proposition that a police officer has absolute quasi-judicial immunity from liability when executing a search warrant. We do not reach this issue because we find that Zoeller is protected by qualified immunity. *See Marks v. Clarke*, 102 F.3d 1012, 1024–25 (9th Cir.1996); *Ortiz v. Van Auken*, 887 F.2d 1366, 1370 (9th Cir.1989).

As discussed above, Gabbert had a clearly established right to practice his profession free from undue and unreasonable governmental interference. Thus, our focus turns to whether a reasonable police officer could have believed this conduct was lawful.

We find Detective Zoeller's conduct objectively reasonable. The warrant at issue expressly stated that it could "be served at any time of the day or night." Zoeller served the warrant on Gabbert at the direction of Conn. Most importantly, Zoeller had no control over the timing of the prosecutors' calling Baker to the grand jury room. Therefore, Zoeller is entitled to qualified immunity from Gabbert's Fourteenth Amendment claim.

### 3. Immunity of the Special Master

■ Special Master Oppenheim also claims absolute quasi-judicial immunity. Judicial immunity may be extended to officials other than judges when "their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436, 113 S.Ct. 2167, 2171–72, 124 L.Ed.2d 391 (1993). We have extended absolute quasi-judicial immunity to special masters. *See Atkinson–Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452, 1454–55 (9th Cir.1993) (noting that a special master "clearly exercise[s] discretionary judgment as part of his function").

Oppenheim exercised discretionary judgment as part of his function. California Penal Code § 1524(c)(1) expressly calls upon the "judgment of the special master." Moreover, § 1524 requires the special master to assess the relevance of any items he examines and to determine whether the party served complied with the warrant. These "discretionary judgments" are functionally comparable to those a judge would make in the absence of a special master. *Antoine*, 508 U.S. at 436, 113 S.Ct. at 2171–72. Oppenheim therefore is entitled to absolute qua-

4. The prosecutors' counsel conceded at oral argument that the only reason for the timing of the search was "to take advantage" of this situation.

5. We are unpersuaded by the prosecutors' argument that their actions were objectively reasonable because they had no reason to know that Baker did not, in fact, consult with Gabbert when she left the grand jury room. It is true that, upon Baker's return to the grand jury room, she invoked her privilege against self-incrimina-

tion on "the advice of counsel." Baker's prepared statement, however, does not make the prosecutors' actions objectively reasonable. At best, the prosecutors had to know that Gabbert was distracted from giving his full attention and advice to Baker. This distraction prevented Gabbert from practicing his profession "according to the highest standards." *Keker*, 398 F.Supp. at 761.

si-judicial immunity.[6]

## B. FOURTH AMENDMENT CLAIM

### 1. Immunity of the Prosecutors

■ Gabbert claims that deputy district attorneys Conn and Najera violated his Fourth Amendment right to be free from unreasonable searches when they engaged in an impermissible second search of his person and possessions without a valid warrant and failed to comply with California Penal Code § 1524.

For the reasons stated above, we reject the prosecutors' claim to absolute immunity. We must determine whether the prosecutors are entitled to qualified immunity.

Searches of attorneys and their offices, of course, are ripe with potential for controversy. Conducted without restraint, legitimate privileges and privacy expectations, including those of uninvolved third parties, can be violated. For this and other sensible policy reasons, California law wisely requires that such searches be carried out by special masters and that disputes over what may or may not be seized be taken promptly before a trial judge for resolution. Cal.Penal Code § 1524; *see People v. Superior Court,* 37 Cal.App.4th 1757, 44 Cal.Rptr.2d 734 (1995); *Geilim v. Superior Court,* 234 Cal.App.3d 166, 285 Cal.Rptr. 602 (1991).

■ We cannot accept, however, Gabbert's claim that the prosecutors' alleged violation of Cal.Penal Code §. 1524 is actionable under 42 U.S.C. § 1983. State law cannot form the basis of a § 1983 claim unless the violation of that law also results in a constitutional or federal law violation. *See Vargas–Badillo v. Diaz–Torres,* 114 F.3d 3, 6 (1st Cir.1997); *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.1991); *Barry v. Fowler,* 902 F.2d 770, 772 (9th Cir.1990). Therefore, the district court properly rejected Gabbert's § 1983 claim based on a violation of state law.

Gabbert also alleges, however, that the prosecutors violated his Fourth Amendment rights by searching or participating in a search of his personal effects without a valid or lawful warrant.

We agree with the district court that the search warrant authorizing Special Master Oppenheim to search Gabbert was valid. *See United States v. Cannon,* 29 F.3d 472, .478 (9th Cir.1994) (warrant is valid if issuing judge had substantial basis to conclude affidavit establishes probable cause); *Forster v. County of Santa Barbara,* 896 F.2d 1146, 1148 (9th Cir.1990) (§ 1983 defendant entitled to qualified immunity even if the affidavit contained intentionally or recklessly false statements if the affidavit contained sufficient content to support probable cause). We disagree with the district court that the valid search warrant authorized the prosecutors to direct the second search of Gabbert.

■ Although a state law violation is not actionable in a § 1983 claim, federal courts must necessarily consider the lawfulness of a search under state law. *See Pierce v. Multnomah County, Or.,* 76 F.3d 1032, 1038 (9th Cir.) (state law determines reasonableness of arrest in § 1983 claim), *cert. denied,* —— U.S. ——, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996); *United States v. Mota,* 982 F.2d 1384, 1387 (9th Cir.1993) (reasonableness of arrest determined by referring to state law in a criminal case); *United States v. Wanless,* 882 F.2d 1459, 1464 (9th Cir.1989) (federal law may require searches and seizures be conducted in accordance with state law). Also, "a violation of state . . . law can serve as the basis of a section 1983 action '[w]here the violation of state law causes the deprivation of rights protected by the Constitution.' " *Draper v. Coombs,* 792 F.2d 915, 921 (9th Cir.1986) (quoting *Wirth v. Surles,* 562 F.2d 319, 322 (4th Cir.1977)). Therefore, we will look to Cal.Penal Code § 1524 and the face of the warrant to determine whether the search warrant authorized the second search of Gabbert.

---

6. Although the law affords absolute immunity to Special Master Oppenheim, it should be noted that he violated several provisions of the California statute regulating the execution of a search of an attorney. *See* Cal.Penal Code § 1524. Additionally, his decision that Gabbert's files contained no privileged material because the documents were not stamped or marked "privileged" is contrary to even the most basic understanding of the attorney–client privilege.

The California law governing the search of attorneys for documentary evidence permits only the special master to conduct the search. Cal.Penal Code § 1524(e). The statute forbids the party seeking or serving the warrant from participating in the search except upon the agreement of the party being searched. *See id.* The prosecutors knew of the statute's requirements and thus directed Detective Zoeller to obtain a search warrant pursuant to that statute. The search warrant stated that Detective Zoeller would search Gabbert "through Special Master Elliot Oppenheim." Neither California law nor the face of the search warrant authorized the prosecutors to participate in the second search of Gabbert without his consent. Thus, the second search was warrantless.

■ The prosecutors argue that the second search was not warrantless because it was a continuation of the first search under a valid warrant. It is true that courts have allowed second searches under the same warrant, as long as the subsequent search could be considered a continuation of the first search. *See United States v. Kaplan,* 895 F.2d 618, 623 (9th Cir.1990); *United States v. Carter,* 854 F.2d 1102, 1107 (8th Cir.1988). In both those cases, however, the same officer conducted the first search and returned shortly to retrieve items listed in the search warrant. *See Kaplan,* 895 F.2d at 623; *Carter,* 854 F.2d at 1105. California law makes clear that only the special master may execute a search of this type. Here, Detective Zoeller conducted the second search at the direction of the prosecutors. Nor did Gabbert consent to the second search by someone other than the special master. A search conducted in such flagrant disregard of statutory norms and the plain requirements of the warrant itself cannot be a continuation of the first search and thus becomes an impermissible general search. *See United States v. Mittelman,* 999 F.2d 440, 442–43 (9th Cir. 1993).

Qualified immunity from civil liability can extend to officials who perform unlawful warrantless searches. *See Barlow v. Ground,* 943 F.2d 1132, 1139 (9th Cir.1991). The right to be free from warrantless searches absent an applicable exception to the warrant requirement is clearly established. *See California v. Acevedo,* 500 U.S. 565, 569, 111 S.Ct. 1982, 1985–86, 114 L.Ed.2d 619 (1991); *United States v. Rambo,* 74 F.3d 948, 953 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996). Thus, "[t]he relevant inquiry is whether a reasonable government official could have believed his conduct was lawful, in light of clearly established law and the information he possessed." *Thorsted v. Kelly,* 858 F.2d 571, 573 (9th Cir.1988).

■ Conn was clearly aware that California law permitted only a special master to search Gabbert. He directed Detective Zoeller to add to the existing affidavit and to secure a search warrant for Gabbert's person and effects. Both the affidavit and the search warrant stated that the search would be conducted by Special Master Oppenheim pursuant to § 1524. In viewing the evidence in the light most favorable to the non-moving party, *see Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996), the record shows that Conn directed Zoeller to search Gabbert after the initial search by the special master. Conn stood close by as Detective Zoeller conducted this warrantless second search. Conn's conduct was therefore not objectively reasonable, and he is not entitled to qualified immunity from Gabbert's Fourth Amendment claim.

■ Although a reasonable prosecutor in Najera's position might also know that the second search was unlawful, the evidence does not show that she was sufficiently involved in the second search to be liable under § 1983. She neither directed the detective to obtain the search warrant nor instructed him to conduct the warrantless second search. Her mere presence during the second search does not arise to a violation of either federal or state law. We therefore affirm the district court's dismissal of Gabbert's Fourth Amendment claim against Najera.

### 2. Immunity of the Detective

■ Gabbert asserts similar Fourth Amendment violations against Detective Zoeller. A police officer does not enjoy abso-

lute immunity from suit for conducting a search but may be protected by qualified immunity. *See Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir.1997). We conclude, for the reasons stated above, that the second search of Gabbert conducted by Detective Zoeller was not authorized by the existing warrant and that Gabbert had a clearly established right to be free from warrantless searches.

The evidence compels the conclusion that a reasonable officer in Zoeller's situation could not have believed that his conduct was lawful. In his affidavit, Zoeller requested the appointment of a special master pursuant to § 1524 "to assist in the search of Mr. Gabbert's documents." He stated that this fulfilled the requirements of the statute. The search warrant issued by the magistrate authorized the special master, not Zoeller, to conduct the search. Clearly, Zoeller knew of the existence of § 1524 and its special master requirement. A reasonable officer would know, not only the existence of the law, but also its general requirements. Detective Zoeller cannot escape liability from Gabbert's claim by asserting ignorance of the substance of the governing law. Therefore, a reasonable detective would know, from the applicable law and from the face of the search warrant, that he was not authorized to search Gabbert. We conclude that Zoeller does not have qualified immunity from Gabbert's Fourth Amendment claim.

### 3. Immunity of the Special Master

■ Gabbert claims that Special Master Oppenheim violated his Fourth Amendment rights by conducting an overbroad search. Oppenheim enjoys absolute immunity for all activities performed pursuant to his role as special master. *See Atkinson–Baker & Assocs.*, 7 F.3d at 1454–55. Although we are mystified by Oppenheim's apparent disregard for the plain requirements of Cal.Penal Code § 1524, he was in fact acting pursuant to a warrant and at least generally doing those things authorized by it. Moreover, the things he searched were those that might have legitimately contained the correspondence specified in the warrant. *See United States v. Grandstaff*, 813 F.2d 1353, 1358 (9th Cir.1987). We therefore affirm the district court's dismissal of this claim against Oppenheim.

### C. SUPPLEMENTAL JURISDICTION OF THE DISTRICT COURT

Because the district court's denial of Gabbert's motion for leave to amend his complaint to include a cause of action under Cal.Penal Code § 1524 was based, in part, on its dismissal of Gabbert's Fourth Amendment claims, we assume, without deciding the issue, that the district court will want to revisit this ruling.

### V. CONCLUSION

In the procedural posture this case comes to us, we are necessarily limited. Only the fullness of discovery and perhaps a trial on the merits can fully explore Gabbert's claims and the defendants' defenses. Defendants may be able to establish that, whatever they did, it did not materially affect Gabbert's rights. We can only say that Gabbert's claims merit full exposition and defendants' defenses complete exploration.

The order granting summary judgment to prosecutors Conn and Najera on Gabbert's Fourteenth Amendment claims is REVERSED. The order granting summary judgment to Detective Zoeller and Special Master Oppenheim on Gabbert's Fourteenth Amendment claims is AFFIRMED. The dismissal of Gabbert's Fourth Amendment claims against Conn and Zoeller is REVERSED. The dismissal of Gabbert's Fourth Amendment claims against Najera and Oppenheim is AFFIRMED.

The case is remanded to the district court for further proceedings in accordance with this opinion. Each party to bear its own costs. The panel retains jurisdiction over further appeals of this matter.