## CONN ET AL. *v.* GABBERT

No. 97–1802.   Argued February 23, 1999—Decided April 5, 1999

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-NOR, SCALIA, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, *post*, p. 293.

*Kevin C. Brazile* argued the cause for petitioners. With him on the briefs were *Lloyd W. Pellman, Donovan Main,* and *Louis V. Aguilar.*

*Michael J. Lightfoot* argued the cause for respondent. With him on the brief were *Stephen B. Sadowsky* and *Melissa N. Widdifield.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

We granted certiorari in this case, 525 U. S. 809 (1998), to decide whether a prosecutor violates an attorney's Fourteenth Amendment right to practice his profession when the prosecutor causes the attorney to be searched at the same time his client is testifying before a grand jury. We con-

---

*\*Kent S. Scheidegger* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging reversal.

A brief of *amici curiae* urging affirmance was filed for the National Association of Criminal Defense Lawyers et al. by *John D. Cline* and *Barbara E. Bergman.*

clude that such conduct by a prosecutor does not violate an attorney's Fourteenth Amendment right to practice his profession.

This case arises out of the high-profile California trials of the "Menendez Brothers," Lyle and Erik Menendez, for the murder of their parents. Petitioners David Conn and Carol Najera are Los Angeles County Deputy District Attorneys, and respondent Paul Gabbert is a criminal defense attorney. In early 1994, after the first Menendez trial ended in a hung jury, the Los Angeles County District Attorney's Office assigned Conn and Najera to prosecute the case on retrial. Conn and Najera learned that Lyle Menendez had written a letter to Traci Baker, his former girlfriend, in which he may have instructed her to testify falsely at trial. Gabbert represented Baker, who had testified as a defense witness in the first trial. Conn obtained and served Baker with a subpoena directing her to testify before the Los Angeles County grand jury and also directing her to produce at that time any correspondence that she had received from Lyle Menendez. After Gabbert unsuccessfully sought to quash the portion of the subpoena directing Baker to produce the Menendez correspondence, Conn and Najera obtained a warrant to search Baker's apartment for any such correspondence. When police tried to execute the warrant, Baker told the police that she had given all her letters from Menendez to Gabbert.

Three days later, on March 21, 1994, Baker appeared as directed before the grand jury, accompanied by Gabbert. Believing that Gabbert might have the letter on his person, Conn directed a police detective to secure a warrant to search Gabbert. California law provides that a warrant to search an attorney must be executed by a court-appointed special master. When the Special Master arrived, Gabbert requested that the search take place in a private room. He did not request that his client's grand jury testimony be postponed. The Special Master searched Gabbert in the private

room, and Gabbert produced two pages of a three-page letter from Lyle Menendez to Baker.

At approximately the same time that the search of Gabbert was taking place, Najera called Baker before the grand jury and began to question her. After being sworn, Najera asked Baker whether she was acquainted with Lyle Menendez. Baker replied that she had been unable to speak with her attorney because he was "still with the special master." Brief for Petitioners 6. A short recess was taken during which time Baker was unable to speak with Gabbert. He was aware that Baker sought to speak with him, but apparently stated that the prosecutors would simply have to delay the questioning until they finished searching him. Baker returned to the grand jury room and declined to answer the question "upon the advice of [my] counsel" on the basis of her Fifth Amendment privilege against self-incrimination. *Id.*, at 7. Najera asked a followup question, and Baker again asked for a short recess to confer with Gabbert. Baker was again unable to locate Gabbert, and she again returned to the grand jury room and asserted her Fifth Amendment privilege. At this point, the grand jury recessed.

Believing that the actions of the prosecutors were illegal, Gabbert brought suit against them and other officials in Federal District Court under Rev. Stat. § 1979, 42 U. S. C. § 1983. Relevant to this appeal by Conn and Najera, he contended that his Fourteenth Amendment right to practice his profession without unreasonable government interference was violated when the prosecutors executed a search warrant at the same time his client was testifying before the grand jury.* Conn and Najera moved for summary judgment on the basis of qualified immunity, and the District Court granted the motion.

---

*Gabbert also brought a claim under § 1983 that Conn and Najera had violated his rights under the Fourth Amendment. That claim is not before us and we express no opinion on it.

The Court of Appeals reversed in part, holding that Conn and Najera were not entitled to qualified immunity on Gabbert's Fourteenth Amendment claim. 131 F. 3d 793 (CA9 1997). Relying on *Board of Regents of State Colleges* v. *Roth*, 408 U. S. 564, 572 (1972), and earlier cases of this Court recognizing a right to choose one's vocation, the Court of Appeals concluded that Gabbert had a right to practice his profession without undue and unreasonable government interference. 131 F. 3d, at 800. The Court of Appeals also held that based upon notions of "'common sense,'" *id.*, at 801, the right allegedly violated in this case was clearly established, and as a result, Conn and Najera were not entitled to qualified immunity: "The plain and intended result [of the prosecutors' actions] was to prevent Gabbert from consulting with Baker during her grand jury appearance. These actions were not objectively reasonable, and thus the prosecutors are not protected by qualified immunity from answering Gabbert's Fourteenth Amendment claim." *Id.*, at 802–803. We granted certiorari and now reverse.

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. 42 U. S. C. § 1983. In order to prevail in a § 1983 action for civil damages from a government official performing discretionary functions, the defense of qualified immunity that our cases have recognized requires that the official be shown to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982). Thus a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. See *Siegert* v. *Gilley*, 500 U. S. 226, 232–233 (1991); see also *County of Sacramento* v. *Lewis*, 523 U. S. 833, 841, n. 5 (1998).

We find no support in our cases for the conclusion of the Court of Appeals that Gabbert had a Fourteenth Amendment right which was violated in this case. The Court of Appeals relied primarily on *Board of Regents* v. *Roth.* In *Roth*, this Court repeated the pronouncement in *Meyer* v. *Nebraska*, 262 U. S. 390, 399 (1923), that the liberty guaranteed by the Fourteenth Amendment "'denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" *Roth, supra*, at 572 (quoting *Meyer, supra*, at 399). But neither *Roth* nor *Meyer* even came close to identifying the asserted "right" violated by the prosecutors in this case. *Meyer* held that substantive due process forebade a State from enacting a statute that prohibited teaching in any language other than English. 262 U. S., at 399, 402–403. And *Roth* was a *procedural* due process case which held that an at-will college professor had no "property" interest in his job within the meaning of the Fourteenth Amendment so as to require the university to hold a hearing before terminating him. 408 U. S., at 578. Neither case will bear the weight placed upon it by either the Court of Appeals or Gabbert: Neither case supports the conclusion that the actions of the prosecutors in this case deprived Gabbert of a liberty interest in practicing law.

Similarly, none of the other cases relied upon by the Court of Appeals or suggested by Gabbert provide any more than scant metaphysical support for the idea that the use of a search warrant by government actors violates an attorney's right to practice his profession. In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some

generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation.   See, *e. g., Dent* v. *West Virginia,* 129 U. S. 114 (1889) (upholding a requirement of licensing before a person can practice medicine); *Truax* v. *Raich,* 239 U. S. 33, 41 (1915) (invalidating on equal protection grounds a state law requiring companies to employ 80% United States citizens).   These cases all deal with a complete prohibition of the right to engage in a calling, and not the sort of brief interruption which occurred here.

Gabbert also relies on *Schware* v. *Board of Bar Examiners of N. M.,* 353 U. S. 232, 238–239 (1957), for the proposition that a State cannot exclude a person from the practice of law for reasons that contravene the Due Process Clause. *Schware* held that former membership in the Communist Party and an arrest record relating to union activities could not be the basis for completely excluding a person from the practice of law.   Like *Dent, supra,* and *Truax, supra,* it does not deal with a brief interruption as a result of legal process. No case of this Court has held that such an intrusion can rise to the level of a violation of the Fourteenth Amendment's liberty right to choose and follow one's calling.   That right is simply not infringed by the inevitable interruptions of our daily routine as a result of legal process, which all of us may experience from time to time.

Gabbert next argues that the improper timing of the search interfered with his client's right to have him outside the grand jury room and available to consult with her.   A grand jury witness has no constitutional right to have counsel present during the grand jury proceeding, *United States* v. *Mandujano,* 425 U. S. 564, 581 (1976), and no decision of this Court has held that a grand jury witness has a right to have her attorney present outside the jury room.   We need not decide today whether such a right exists, because Gabbert clearly had no standing to raise the alleged infringement of the rights of his client Tracy Baker.   "[T]he plaintiff

generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth* v. *Seldin,* 422 U. S. 490, 499 (1975).

Gabbert of course does have standing to complain of the allegedly unreasonable timing of the execution of the search warrant to prevent him from advising his client. In essence then, he argues that the prosecutors searched him in an unreasonable manner. We have held that where another provision of the Constitution "provides an explicit textual source of constitutional protection," a court must assess a plaintiff's claims under that explicit provision and "not the more generalized notion of 'substantive due process.'" *Graham* v. *Connor,* 490 U. S. 386, 395 (1989). Challenges to the reasonableness of a search by government agents clearly fall under the Fourth Amendment, and not the Fourteenth.

We hold that the Fourteenth Amendment right to practice one's calling is not violated by the execution of a search warrant, whether calculated to annoy or even to prevent consultation with a grand jury witness. In so holding, we thus of course pretermit the question whether such a right was "clearly established" as of a given day. The judgment of the Court of Appeals holding to the contrary is therefore reversed.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment.

Respondent claims that petitioners violated his constitutional right to practice his profession by unreasonably timing the service and execution of a warrant to search his papers. There is, however, no evidence that respondent's income, reputation, clientele, or professional qualifications were adversely affected by the search. Nor is there any real evidence or allegation that respondent's client was substantially prejudiced by what occurred. See App. to Pet. for Cert. B–17. Accordingly, despite the shabby character of petitioners' conduct, I agree with the Court that it did not deprive

respondent of liberty or property in violation of the Fourteenth Amendment.

My conclusion that the judgment of the Court of Appeals must be reversed is reached independently of the question whether petitioners may have violated the Fourth Amendment because their method of conducting the search was arguably unreasonable—an issue not squarely presented and argued by petitioners in this Court. If their conduct had violated the Due Process Clause of the Fourteenth Amendment, there is no reason why such a violation would cease to exist just because they also violated some other constitutional provision. Thus the suggestion in the penultimate paragraph of the Court's opinion—that the possible existence of a second source of constitutional protection provides a sufficient reason for reversal, *ante*, at 293—is quite unpersuasive. Indeed, if that ground for decision were valid, most of the reasoning in the preceding pages of the Court's opinion would be unnecessary to the decision.