UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARK GRAVITTE,
                    *Plaintiff-Appellant,*

          and

NORTH CAROLINA POLICE BENEVOLENT
ASSOCIATION,
                              *Plaintiff,*

          v.

NORTH CAROLINA DIVISION OF MOTOR
VEHICLES; NORTH CAROLINA
DEPARTMENT OF TRANSPORTATION;          No. 01-1718
DAVID MCCOY; JANICE FAULKNER;
DAVID RICHARDS; STATE OF NORTH
CAROLINA, and all agents and
successors in office of the official
capacity defendants,
                    *Defendants-Appellees,*

SOUTHERN STATES POLICE
BENEVOLENT ASSOCIATION,
                    *Amicus Curiae.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-00-845-1-BO)

Argued: February 25, 2002

Decided: March 25, 2002

Before LUTTIG and GREGORY, Circuit Judges, and
Henry M. HERLONG, Jr., United States District Judge
for the District of South Carolina,
sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Joseph Michael McGuinness, THE MCGUINNESS LAW FIRM, Elizabethtown, North Carolina, for Appellant. Jeffrey Reid Edwards, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Roy Cooper, North Carolina Attorney General, Hal F. Askins, Special Deputy Attorney General, David Roy Blackwell, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. Richard Hendrix, Stem, North Carolina, for Amicus Curiae.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Mark Gravitte is a law enforcement officer with the North Carolina Division of Motor Vehicles ("DMV").  He, along with the North Carolina Police Benevolent Association ("NCPBA"), claims that certain policies of his employer, which require police officers to average a minimum number of enforcement actions and citations each day, violate his constitutional rights. The district court dismissed Gravitte's and NCPBA's section 1983 complaint for failing to state a claim on which relief may be granted, and for the following reasons, we affirm.

I.

According to the plaintiffs' complaint, which we must accept as true for the purposes of a motion to dismiss, the defendants have

implemented a "ticket quota" policy, "which is employed against . . . law enforcement employees of DMV within some DMV districts including Plaintiff Gravitte herein." J.A. 221. In the districts that employ these "ticket quotas," DMV officers are expected to: 1) average five "enforcement actions" per day,[1] 2) average two inspections per day on commercial vehicles, 3) issue "a certain number" of traffic citations, and 4) issue "enough" overweight citations on commercial vehicles. J.A. 225-26. DMV officers who fail to meet these expectations are given supervisory complaints. *Id.*

The complaint asserts that this "ticket quota" policy interferes with police discretion, pressures DMV officers to "selectively enforce the law," and is causing "frustration, hardship, fear, worry, and stress" upon DMV officers. J.A. 224. Gravitte, in particular, alleges that this policy is adversely affecting his employment and career, and references an October 19, 2000, memorandum in which Sgt. C.O. Edwards rebuked Gravitte for issuing too many traffic tickets to private vehicles for speeding, and not enough citations to commercial vehicles. J.A. 45. The plaintiffs allege that this "ticket quota" policy violates the Equal Protection clause, the Due Process clause, the Privileges and Immunities clause, and the Fourth Amendment. They seek declaratory and injunctive relief.

---

[1]This policy is evidenced by a June 8, 2000, memorandum from Gravitte's supervisor, Sgt. C.O. Edwards, which states, in part:

> [T]he requirement for an average day's work is five enforcement actions per day. . . .

> Stopping only 4 trucks in an eight hour or ten hour period, shows poor work habits . . . Unless tied up it is easy to stop a truck per hour to perform some type of check.

> There are way too many NCUC being written on private vehicles. The area of responsibility is Commercial vehicles not private. I am requesting that you get in your area of responsibility and give the State of North Carolina DMV Enforcement Section a good eight hours work each day.

J.A. 50.

## II.

In determining whether the plaintiffs have stated a claim under section 1983, we must determine whether the alleged "ticket quota" policy infringes rights of the plaintiffs secured by the United States Constitution. We are convinced that it does not. With regard to the plaintiffs' Equal Protection claim, the mere assertion that the DMV district in which Gravitte worked imposed "ticket quota" policies on its officers, while other districts in North Carolina did not, is insufficient to state a violation of the Clause. The Constitution does not require state agencies to impose identical employment policies over each of its geographic subdivisions. Moreover, the priorities of local law enforcement units vary over different geographical regions; hence, officers who work in different districts of the DMV are not similarly situated for the purposes of equal protection analysis. And Gravitte was treated no differently than the other similarly situated DMV officers in the district where he worked — they were all subject to the ticket quota requirement.

The plaintiffs' due process claims are also without merit. The due process clause protects the right of an individual to pursue his chosen occupation, *see Conn* v. *Gabbert*, 526 U.S. 286, 291-92 (1999); *Meyer* v. *Nebraska*, 262 U.S. 390, 399 (1923), although this right is subject to reasonable government regulation. *See Conn*, 526 U.S. at 292. But the right to occupational liberty does not provide for judicial scrutiny when the government acts as employer to regulate the employment relationship with its own employees. Rather, it protects the right to pursue one's calling in the private sector from licensure or regulatory requirements that lack a rational relationship to a legitimate governmental interest. *See*, *e.g.*, *Craigmiles* v. *Giles*, 110 F. Supp. 2d 658, 661-62 (E.D. Tenn. 2000) (invalidating a state law that required any person selling caskets to hold a funeral director's license issued by the state). No such claim is alleged here.

The substantive component of the due process clause also protects the individual against "arbitrary government action." *See County of Sacramento* v. *Lewis*, 523 U.S. 833, 845-46 (1998). However, in cases challenging executive action, (rather than legislation), under the substantive due process clause, "*only the most egregious official conduct* can be said to be 'arbitrary in the constitutional sense.'" *Id.* at

846 (emphasis added) (citations omitted). *Compare Rochin* v. *California*, 342 U.S. 165, 172 (introduction of evidence at trial obtained by forced pumping of suspect's stomach was so "brutal" and "offensive to human dignity" as to violate the due process clause), *with Lewis*, 523 U.S. 833, 854 (allegation of policer officer's "deliberate and reckless indifference to life" during a high-speed automobile chase that ended in the death of a motorcycle passenger did not state a claim of "arbitrary conduct" under the substantive due process clause).

The alleged facts regarding the defendants' ticket quota policy are not even close to an allegation of "egregious" or "outrageous" executive action necessary to state a substantive due process claim under *Lewis*. *See* 523 U.S. 833, 847, n.8. The policy adopted by the DMV helps to ensure a minimum quantity of work from its law enforcement officers and helps to prevent shirking on the job. An employment policy enacted in pursuit of these goals, goals that would be shared by any reasonable employer, can hardly be deemed "egregious" or "outrageous," even if it impinges on traditional police discretion and imposes more burdensome working conditions on law enforcement officers. The plaintiffs' allegation that officers are "pressured and coerced to violate the law as a result of the ongoing ticket quota scheme,"[2] J.A. 224, does not alter our conclusion. While it is conceivable that officers might be tempted to fill their quota by issuing citations for borderline or non-existent violations out of laziness, there is no allegation that the numerical quotas are so onerous that it is *impossible* for a diligent DMV officer to meet them without breaking the law. To be sure, the alleged ticket quota policy makes a law enforcement officer's job more difficult. We are also sure that is not enough, standing alone, to constitute a substantive due process violation.

Moreover, although we need not resolve this issue, it is far from clear that the defendants' actions, even if they could be deemed "arbitrary" in the constitutional sense, have deprived (or have threatened to deprive) Gravitte of any cognizable liberty interest or property interest. Although Gravitte was a tenured employee of the DMV, he

---

[2]General Order No. 29 forbids officers from issuing citations for anything short of "*definite clear cut*, *substantial* violations." J.A. 64 (emphasis in original).

was not fired from his job, but was merely criticized by his supervisor for issuing too many speeding tickets to private vehicles and not enough citations to commercial motor vehicles. J.A. 29. *See Gilbert* v. *Homar*, 520 U.S. 924, 929 (1997) ("[W]e have not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination."); *Stone* v. *University of Maryland Medical System Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988) ("[A] public employer's stigmatizing remarks do not deprive an employee of a liberty interest unless they are made in the course of a discharge or significant demotion."). A plaintiff seeking to assert a substantive due process claim must allege the deprivation of a cognizable interest in life, liberty, or property; a mere allegation of "arbitrary" government conduct in the air, so to speak, will not suffice. *See Collins* v. *City of Harper Heights, Texas*, 503 U.S. 115, 129-30 (1992) (assuming arguendo that plaintiff had a "liberty interest" before analyzing whether the deprivation of that liberty was "arbitrary in the constitutional sense").

The plaintiffs' remaining claims merit only brief discussion. Their complaint fails to allege a violation of the Privileges and Immunities clause of Article IV because there is no allegation that the "ticket quota" policy discriminates against citizens of states other than North Carolina. *See Toomer* v. *Witsell*, 334 U.S. 385, 396 (1948) (holding that the Privileges and Immunities clause "bars discrimination *against citizens of other States* where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.") (emphasis added). And plaintiffs have no standing to assert the Fourth Amendment rights of those who "might" be illegally searched or seized solely because of the existence of the challenged policy in this case — they must allege an actual or imminent injury to *their own* Fourth Amendment rights, not someone else's. *See Allen* v. *Wright*, 468 U.S. 737, 751 (1984) ("[A] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (emphasis added); *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[A] plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' ") (internal citations omitted).

The complaint was properly dismissed by the district court.

*AFFIRMED*