

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2006

# Hall v. SEPTA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1364

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Hall v. SEPTA" (2006). *2006 Decisions*. Paper 1650.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1650

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1364

———————

EDWARD HALL,
                            Appellant

v.

SEPTA; RICHARD EVANS

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil 04-cv-00892
District Judge:  The Honorable Stewart Dalzell

———————

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2006

———————

Before: BARRY and AMBRO, <u>Circuit Judges</u>, and DEBEVOISE,[*] <u>District Judge</u>

———————

(Opinion Filed: February 1, 2006)

———————

OPINION

———————

---

[*]The Honorable Dickinson R. Debevoise, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

BARRY, Circuit Judge

Appellant Edward Hall brought suit against appellees Southeastern Pennsylvania Transportation Authority ("SEPTA") and Richard J. Evans, the Chief of the SEPTA Transit Police Department. The District Court granted summary judgment to appellees on one count of a three count complaint, and appellant appeals. We will affirm.

**I.**

At approximately 10:30 P.M. on the evening of October 26, 2002, appellant, a sergeant in the SEPTA Transit Police Department,[1] parked his personal vehicle outside his residence in Philadelphia, Pennsylvania. On the floor behind the driver's seat was a knapsack containing, among other personal items, the following SEPTA Police equipment: (1) radio with microphone; (2) winter hat with fronticepiece; (3) garrison belt with gun holster; (4) handcuff case with cuffs; (5) two winter shirts with SEPTA patch; (6) two winter pants; and (7) a black neck tie. The next morning, appellant discovered that his car had been broken into and the knapsack and its contents stolen. The item of particular concern in this case is the SEPTA radio, which was issued to appellant on June 12, 2000. Upon issuance, appellant signed a receipt that indicated his understanding that he is "financially responsible for the [radio] in the event it is lost, stolen or damaged due to my negligence. . . ." (A239.)

---

[1] Appellant has been employed by the SEPTA Transit Police Department since 1983 and has been a sergeant since 1991.

On October 28, 2002, appellant submitted a memorandum to Chief of SEPTA Police Richard Evans notifying him of what had occurred. Appellant was advised the same day that he would be required to take part in a pre-disciplinary interview with Lt. Coates on October 31, 2002 "in reference to [his] failure to safeguard [his] police equipment." (A218.) Appellant then submitted a memorandum in which he stated his position regarding any potential responsibility for the stolen equipment in hopes that the disciplinary proceedings would be terminated. He concluded the memorandum by noting his expectation that the interview would "exonerate [him] of any violation of police policies" and his suspicion, in the event he was not exonerated, that "there's underlying motives of corruption and abuse of office." (A220.)[2]

---

[2]In response to the October 28 memorandum, Chief Evans replied by memorandum dated November 1, 2002, which in full stated:

> I have received your memorandum dated October 28, 2002. The pre-disciplinary investigation is conducted to establish facts, which support or reject discipline.
>
> The points you make in your memorandum may be used by you to convince the investigator either that discipline is not warranted or that it should be mitigated.
>
> I am disturbed by your final paragraph contained in the memorandum. If you have evidence of corruption and/or abuse of office by members of this Department, you as law enforcement official [sic] are obliged to present those facts.
>
> Please submit a memorandum to this office outlining those facts by November 12, 2002 so that an investigation may be conducted. The memorandum may be submitted directly, outside of the chain of command.

(A222.)

Appellant submitted a memorandum dated November 18, 2002 which restated his suspicions but offered no factual basis for his claims of abuse of office and corruption.

At the hearing, appellant informed Lt. Coates of the circumstances surrounding the theft, and was ordered to repay SEPTA the value of the radio. Appellant contended, in a memorandum to the SEPTA police labor liaison, that the order was inappropriate in light of his not having "been found guilty of any wrong doing." (A223.) Lt. Coates, however, reported in a memorandum to Chief Evans dated November 6, 2002 "that although Sgt. Hall was a victim of a crime, [] he was negligent by leaving his Septa police radio inside a knapsack in the rear of his vehicle." (A227.) He believed that appellant had violated Article II of the progressive disciplinary code, which provides that "[f]ailure to properly care for and maintain Septa equipment" constituted Neglect of Duty. (A228.) He nevertheless recommended only counseling and reinstruction in addition to reimbursement given that appellant lacked any prior disciplinary record. On November 6, appellant received a memorandum informing him that his "actions indicate negligence in adequately safeguarding Septa equipment." (A229.)

Pursuant to SEPTA disciplinary procedures, appellant appealed that finding. A hearing was held by Captain Steven Harold in his office on November 14, 2002. Captain Harold "concur[red] with the Lieutenant's decision." (A238) ("You failed to take appropriate safe guard measures and used poor judgement by storing the radio in your vehicle.") Appellant appealed that decision and a hearing was held on December 12, 2002 in the office of Deputy Chief David Scott. In advance of that hearing, appellant submitted a memorandum wherein, *inter alia*, he requested that he be exonerated "of

4

negligence." (A242) ("The option of where I chose to store my radio that night may be considered 'poor judgment' to some. However, I didn't neglect to lock all doors and close all windows.") Deputy Chief Scott upheld the prior decisions.

Appellant filed a final appeal which was heard by Chief Evans. Chief Evans found that

> [n]either Lieutenant Coates nor appeal hearing officers, Captain Steven Harold nor Deputy Chief David Scott substituted their own opinions for policy. Policy states that you are to properly care for and maintain SEPTA equipment. It was their review of the circumstances and exercise of good management judgement, which concluded that your vehicle is not sufficiently secure to properly safeguard an expensive piece of equipment, and that you have a responsibility to reimburse the Authority for the stolen radio because you failed to adequately secure it.

(A252.)[3] Appellant was thereafter required to reimburse SEPTA $50 per week until the $2,800 balance was paid.

Having exhausted his internal remedies, appellant began making payments and, on March 1, 2004, filed a complaint in the United States District Court for the Eastern District of Pennsylvania against SEPTA and Chief Evans. He pressed three counts in his complaint: (1) race discrimination in violation of 42 U.S.C. § 1981; (2) retaliation in

---

[3]Reimbursement was ordered because of: (1) appellant's agreement upon receipt of the radio; (2) an employee responsibility policy stating that "[w]hen it is determined that negligence was involved in the loss, theft, or damage of SEPTA property, the employee will be subject to disciplinary action . . . and/or be required to pay for the lost, stolen or damaged property," (A263); and (3) a disciplinary code provision providing that it is neglect of duty for an officer to fail to "properly care for and maintain SEPTA equipment." (A281).

violation of 42 U.S.C. § 1981; and (3) a due process claim arising under 42 U.S.C. § 1983. His race discrimination and retaliation claims survived appellees' motion for summary judgment and were tried to a jury, which found against him. It is only the final claim, that arising under § 1983, that is before us on appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the grant of summary judgment is plenary. *See Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We "view the inferences to be drawn from the underlying facts in the light most favorable" to the nonmoving party, here, appellant. *Kopec*, 361 F.3d at 775.

## III.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Although its language is broad, "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). Therefore, we must first "determine whether [appellant] has alleged the deprivation of an actual constitutional right at all." *Connecticut v. Gabbert*, 526 U.S. 286, 290 (1999).

Appellant alleged, in support of his § 1983 claim, that SEPTA failed "to properly train, supervise, and control its officials and Chief of Police regarding the due process rights of [appellant] and to be free from retaliatory actions [sic]," and that appellees violated his due process rights under the Fourteenth Amendment by unlawfully taking his property[4] and "subjecting him to unlawful retaliatory actions." (A28.) The District Court, in its order granting summary judgment, observed that the complaint "is no paradigm of clarity, and we are unable to divine from it the constitutional violation he alleges." (A11.)

> His response to [appellees'] summary judgment motion as to count three [the § 1983 claim] is even murkier and sets forth little more than conclusions unsupported by record evidence[.]

> [Appellant] never (1) separately identifies each constitutional right [appellees] violated or entitlement they deprived him of; (2) cites legal authority holding that such a right or entitlement exists, or, if there is no such authority, acknowledges the lack thereof and cites analogous cases suggesting that such a right or entitlement should exist; (3) supports each

---

[4] Appellant also asserts a violation of the Fourth Amendment in pressing his due process claim. He has not suggested, nor do we see, how the Fourth Amendment is implicated.

7

factual assertion with citations to the record; and (4) responds to the arguments defendants raised in their brief[.]

At this late date, [appellant] must offer more than speculation about what, precisely, [he] is even claiming in this count that is not claimed in counts one and two, and thus we shall grant summary judgment as to count three[.]

(A11-12) (emphasis in original and footnote omitted).

Although the lack of clarity persists on appeal, two primary bases for appellant's § 1983 claim can be gleaned. First, appellant contends that appellees violated his rights under the Fourteenth Amendment when they took his property without adequately following their own procedures. Second, he contends that he was retaliated against for exercising his First Amendment right to voice his suspicions that abuse of office and corruption motivated the reimbursement order.

The Constitution protects against deprivations "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. There is no serious dispute in this case that the reimbursement order represented a deprivation of appellant's property. Appellant, however, challenges the procedural sufficiency of SEPTA's investigatory and appeals process leading to the order of reimbursement. "Due process requires that a deprivation of a property interest 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 738 (3d Cir. 2003) (citations omitted). Appellant was provided with notice of the institution of an investigation and was offered numerous opportunities to make his case. He does not disagree, arguing instead that all of that was "staged" and that there was a failure to

adequately investigate whether he was indeed negligent. There is utterly no evidence in the record to support either argument, and his mere say-so does not make it so.

Appellant also appears to argue that he was not provided sufficient notice that leaving the radio in his car could constitute negligence. Again, we disagree. It was neither unforeseeable nor unfair that SEPTA would deem it negligent for one to leave a radio in his private vehicle and neglect of duty for one to fail to "properly care for . . . SEPTA equipment." *See generally San Filippo v. Bongiovanni*, 961 F.2d 1125 (3d Cir. 1992). Appellant was on fair notice that his conduct could, at a minimum, "put him at risk" of a reimbursement order. *Id.* at 1137.

Moreover, appellant cannot succeed by claiming that the reimbursement order constituted a violation of substantive due process. Being required to reimburse SEPTA the cost of the radio under the circumstances here is clearly not "conduct 'that shocks the conscience' and violates the 'decencies of civilized conduct.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952) (finding a substantive due process violation where a suspect's stomach was forcibly pumped)).

Turning to his retaliation claim, we find that appellant's contention that the reimbursement order was in retaliation for exercising what he contends was his First Amendment right to voice his suspicions regarding abuse of office and corruption is without merit. We apply a three-step test in assessing this claim. *See Hill v. City of*

9

*Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). Appellant must demonstrate "that the activity is in fact protected," and "that the protected activity 'was a substantial factor in the alleged retaliatory action.'" *Id.* (citations omitted). If appellant is able to make such a showing, appellees could "defeat [appellant's] claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." *Id.*

Appellant's claim fails at the first step. "In order to find whether a public employee engaged in protected free speech activity, the court must first determine whether the speech can be fairly characterized as constituting speech on a matter of public concern." *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993). Appellant's contention that officials at SEPTA conspired in their efforts to unfairly require him to pay for the stolen radio cannot be "fairly considered as relating to any matter of political, social, or other concern to the community."

> Whether the speech can be fairly characterized as relating to any political, social or other concern of the community is determined by its "content, form, and context." The content of the speech may help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed.

*Id.* (citations omitted). Appellant never pursued his suspicions, never made them public, and cast the issue in terms of his individual situation until the instant appeal. Moreover,

10

although appellant correctly notes that he need not prove that there was corruption, the mere allegation that it exists does not clothe him with the protection of the First Amendment. Appellant's corruption argument, like his due process argument, distills to a contention that any negative decision by appellees *must* have been tainted by impropriety. *Connick v. Myers*, 461 U.S. 138, 146 (1983). Summary judgment was properly granted.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.