FILED
COURT OF APPEALS
DIVISION II

2013 JUL 30 AM 10: 27

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CURTIS JOHNSON, | No. 42738-9-II |
| Respondent, | |
| v. | |
| WASHINGTON DEPARTMENT OF FISH AND WILDLIFE, | PUBLISHED IN PART OPINION |
| Appellant. | |

PENOYAR, J. — Curtis Johnson applied two months late to renew his 2007 Dungeness crab coastal fishery license. The Department of Fish and Wildlife (Department) denied his renewal application and informed him that his failure to timely renew meant he was barred from renewing his license in subsequent years. Johnson appealed this decision to a hearings officer, who affirmed the Department. Johnson then appealed to Grays Harbor Superior Court, which reversed the Department and ordered it to reinstate Johnson's license. The Department appealed the superior court's decision to this court.[1] Johnson argues that the Department violated his procedural due process rights and that RCW 77.70.360 violates substantive due process. We hold that the Department did not violate Johnson's due process rights because he was afforded notice and a hearing and that RCW 77.70.360 is rationally related to protecting the fishery.

In the unpublished portion of the opinion, we address Johnson's additional arguments that (1) the Department erroneously interpreted and applied RCW 77.70.360 when it determined that his failure to timely renew his license in 2007 barred him from renewing it in subsequent years; (2) the statutes the Department relied on are unconstitutionally vague; (3) the Department

---

[1] Although the Department is the appellant, under Division II rules, the party filing an appeal under the Administrative Procedure Act (APA) in superior court is responsible for the opening and reply briefs before this court. Therefore, Johnson is treated as the appellant in this case.

is equitably estopped from denying his renewal application; and (4) he is entitled to attorney fees. We hold that the Department did not err in applying RCW 77.70.360 because it requires an applicant to have held a license in the previous year and Johnson's failure to renew his license in 2007 meant he did not hold a license in 2007. Additionally, the statutes are not unconstitutionally vague; equitable estoppel does not apply here because Johnson failed to prove that the Department made inconsistent statements; and we do not award Johnson attorney fees because he did not prevail. We reverse the trial court's order setting aside the Department's order and affirm the Department.

## FACTS

Johnson failed to renew his Dungeness crab coastal fishery license in 2007, which resulted in his license permanently expiring. Johnson had held a Dungeness crab commercial fishing license since 1991. In 1995, the legislature limited entry into the Dungeness crab coastal fishery, providing that "the director shall issue no new Dungeness crab-coastal fishery licenses after December 31, 1995," and that "[a] person may renew an existing license only if the person held the license sought to be renewed during the previous year." RCW 77.70.360. The Department granted Johnson a "permanent" coastal fishery license in 1995. Clerk's Papers (CP) at 118. Johnson renewed this license every year until 2007.

Under RCW 77.65.030, the deadline to renew a commercial license is December 31 of the calendar year for which the license is sought. For example, a license holder has until December 31, 2013, to renew his 2013 license. Johnson did not attempt to renew his 2007 license until March 4, 2008, because he believed that he could not fish under his license that

year. Johnson had leased his license to Kenneth Greenfield starting in the 2005-06 season[2] but had difficulty contacting Greenfield thereafter. In the fall of 2007, Johnson found another fisher interested in leasing his license, so he called the Department to ask about changing the vessel designation for the license. Johnson testified that the Department told him he could not change the vessel designation for the license twice within two consecutive years and that he would have to wait until after 2007 to designate another vessel.[3] Since he believed the designation restraints prevented him from using the license himself or leasing to another fisher, Johnson decided that it would be a waste of the permit fee to renew his license for 2007. Johnson said that during his conversations with the Department about vessel designations, the Department never reminded him that he needed to renew his license or that failure to do so would cause his license to permanently expire.

The Department usually mails renewal reminders in the fall, but Johnson testified that he did not receive one in 2007, likely because of mail delivery issues in his neighborhood. The reminders include the license's expiration date—December 31—but they do not indicate the consequences of failing to renew.

In early 2008, Johnson again tried to change the vessel designation for his license. The Department then informed him that he had not renewed his license in 2007, which meant that he could not renew it for 2008 or any subsequent year. Nevertheless, Johnson attempted to apply

---

[2] The fishery is open on a seasonal basis spanning two calendar years, but the license renewal system operates by calendar year.

[3] A Department representative testified at the hearing that this information was incorrect. The Department does not allow two vessel redesignations within two *seasons*, but a season is different than a calendar year, and two seasons had passed since Johnson had last changed the vessel designation. Therefore, he would have been able to designate a new vessel in the fall of 2007.

for renewal, and the Department denied his renewal application, stating that it was prohibited by statute from accepting applications after the December 31 deadline.

Johnson appealed to an administrative hearings officer. The hearings officer affirmed the permit denial and concluded that Johnson's failure to timely renew his license resulted in the license permanently expiring. The hearings officer concluded that RCW 77.65.030 required Johnson to renew his license by December 31, 2007, which he did not do, and that RCW 77.70.360, which states that a person may renew an existing license only if that person held the license sought to be renewed during the previous year, "means that when a . . . license is not renewed it is no longer capable of being renewed in the future." CP at 123. Johnson appealed to the superior court, which reversed the Department and ordered it to renew Johnson's license. The Department appeals.

## ANALYSIS

I.    STANDARD OF REVIEW

Under the Washington Administrative Procedures Act (APA),[4] we sit in the same position as the superior court and apply the APA directly to the agency's administrative record. *Burnham v. Dep't of Soc. & Health Servs.*, 115 Wn. App. 435, 438, 63 P.3d 816 (2003) (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)). The party challenging the agency action bears the burden of demonstrating that the action was invalid. RCW 34.05.570(1)(a); *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 381, 932 P.2d 139 (1997). A court shall grant relief from an agency's order if the order violates constitutional provisions, the agency has erroneously interpreted or applied the law, or the order is not supported by substantial evidence. RCW 34.05.570(3)(a), (d), (e). Whether an agency's

---

[4] Chapter 34.05 RCW

order violates the constitution and whether it has erroneously applied the law are questions of law that we review de novo. *Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 7, 256 P.3d 339 (2011); *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 154 Wn.2d 224, 233, 110 P.3d 1132 (2005). An agency order is supported by substantial evidence if there is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Hardee*, 172 Wn.2d at 7 (quoting *Thurston County v. W. Wash. Growth Mgmt. Hearings Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008)).

II.      PROCEDURAL DUE PROCESS

Johnson first argues that the Department violated his procedural due process rights. Because Johnson received notice of the Department's actions and an administrative hearing in which he was able to present evidence and to examine the Department's witnesses, his argument fails.

The due process clause of the Fourteenth Amendment prohibits the state from depriving any person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV. Assuming, without deciding, that Johnson has a claim of entitlement to a license even though his right to renew expired, we address whether the Department provided adequate process.[5]

At a minimum, due process requires notice and an opportunity to be heard. *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 768, 871 P.2d 1050 (1994). Notice must be reasonably calculated to inform the affected party of the pending action and of the opportunity to object. *State v. Dolson*, 138 Wn.2d 773, 777, 982 P.2d 100 (1999). The opportunity to be heard must be

---

[5] Johnson argues that he has a protected property interest, citing *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). However, federal circuit court due process cases are not binding on this court. *State v. Manussier*, 129 Wn.2d 652, 680, 921 P.2d 473 (1996) (quoting *Rozner v. City of Bellevue*, 116 Wn.2d 342, 351, 804 P.2d 24 (1991) (federal decisions regarding due process are afforded great weight, but they are not controlling).

meaningful in time and manner. *Morrison v. Dep't of Labor & Indus.*, 168 Wn. App. 269, 273, 277 P.3d 675, *review denied*, 175 Wn.2d 1012 (2012) (quoting *Downey v. Pierce County*, 165 Wn. App. 152, 165, 267 P.3d 445 (2011)). To determine how much process is due, we balance the private interest involved; the risk of erroneous deprivation through the procedures involved and the value of additional procedures; and the government's interest, including the burdens that accompany additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Due process is a flexible concept and the procedures required depend on the circumstances of a particular situation. *Mathews*, 424 U.S. at 334.

Here, Johnson received adequate notice that the Department was rejecting his renewal application. The Department sent him a letter dated March 14, 2008, containing the reasons for the denial and informing Johnson that he could request an administrative hearing to contest the denial. Johnson also received an opportunity to be heard. He had an administrative hearing before a hearings officer where he was represented by counsel and where he submitted evidence, gave his testimony, and questioned the Department's representative.

Johnson argues that this process was inadequate because he should have received pre-deprivation notice and opportunity for a hearing. His argument fails because, under the *Mathews* factors, the Department's procedures were adequate.

The first factor—the private interest involved—favors Johnson. The loss of his license inhibits his ability to engage in commercial crab fishing. The next two factors favor the Department. Regarding the second factor, the risk of erroneous deprivation and the value of additional procedures are slight. Johnson had pre-deprivation notice through the statutes, which set out when a license expires, when it must be renewed, and the qualifications for renewal—

including a valid license from the previous year—and through the Department's renewal reminders. *See* RCW 77.65.030, 77.65.070(3), 77.70.360. Further, the Department based its decision on a readily ascertainable and undisputed fact: that Johnson missed the December 31, 2007, deadline for renewing his license for 2007.

As for the third factor—the Department's interest in maintaining its licensing procedures—it would be impossible for the Department to provide individuals in Johnson's situation a pre-deprivation hearing. Under the statute, Johnson had until December 31, 2007, to renew his license. RCW 77.65.030. Until that deadline passed, the Department had no reason to deny Johnson's application. Given the low risk of erroneous deprivation and the impossibility of holding a pre-deprivation hearing, the Department's procedures in this case were adequate.

III.    SUBSTANTIVE DUE PROCESS

Johnson next argues that RCW 77.70.360 violates substantive due process. Because the statute is rationally related to fishery management, we hold that it does not violate Johnson's substantive due process rights.

"Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures." *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 218-19, 143 P.3d 571 (2006). As with a procedural due process claim, a plaintiff must first show that the state deprived him of a constitutionally protected liberty or property interest. *Nieshe v. Concrete Sch. Dist.*, 129 Wn. App. 632, 641, 127 P.3d 713 (2005). Johnson asserts that he has a protected property interest in his commercial crabbing license because "once issued, professional and motor vehicle licenses create interests requiring due process protection." Opening Br. at 39 (citing *Amunrud*, 158 Wn.2d at 219). Additionally, both the United States Supreme Court and the Washington Supreme Court have

7

held that the right to pursue a particular profession is a protected liberty interest. *Conn v. Gabbert*, 256 U.S. 286, 291-92, 119 S. Ct. 1292, 143 L. Ed 2d 399 (1999); *Amunrud*, 158 Wn.2d at 220. Arguably, Johnson has a protected liberty interest in continuing to fish for crab.

Once a party has identified a protected interest, we must determine what level of review to apply. The level of review we apply to a substantive due process challenge depends on the nature of the right affected. *Amunrud*, 158 Wn.2d at 219. If a right can be characterized as fundamental, strict scrutiny applies. *Amunrud*, 158 Wn.2d at 220. The right to pursue a profession, which is what is at issue here, is a protected interest but not a fundamental right. *Amunrud*, 158 Wn.2d at 220-21. Therefore, rational basis review applies. *Amunrud*, 158 Wn.2d at 220. To survive rational basis review, the Department's action must be rationally related to a legitimate state interest. *Amunrud*, 158 Wn.2d at 222.

We hold that RCW 77.70.360 is rationally related to a legitimate state interest. As Johnson concedes, management of the coastal crab fishery is a legitimate state interest. RCW 77.70.360 is rationally related to fishery management: it reduces the number of fishers and licenses while protecting those who continually participate in the fishery.

Johnson argues that we should review his claim using the three-prong test Washington courts apply when considering whether a statute violates due process: (1) whether the statute is aimed at achieving a legitimate public purpose, (2) whether it uses means that are reasonably necessary to achieve that purpose, and (3) whether it is unduly oppressive on individuals. He contends that, under this test, RCW 77.70.360 violates substantive due process because it is not reasonably necessary to achieve fishery management and it is unduly oppressive. But our Supreme Court in *Amunrud*, another licensing case, declined to engage in the three-prong

8

analysis and unambiguously stated that rational basis review applies in situations that involve a non-fundamental right, such as the right to pursue a profession. 158 Wn.2d at 226.

Johnson argues that his situation is similar to the plaintiffs' in *Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1 (1993). In *Guimont*, mobile home park owners challenged the constitutionality of the Mobile Home Relocation Assistance Act, chapter 59.21 RCW, which required them to pay a portion of their residents' relocation fees. 121 Wn.2d at 592-93. To determine whether the Act violated the owners' substantive due process rights, the court applied the three-prong test. *Guimont*, 121 Wn.2d at 609. The court held that the Act violated substantive due process, stating that providing relocation assistance was reasonably necessary to achieve the Act's purpose but that requiring park owners to bear the costs was unduly oppressive. *Guimont*, 121 Wn.2d at 610, 613. The court opined that a less oppressive solution would be to require society as a whole to share the costs. *Guimont*, 121 Wn.2d 611.

More recently, our Supreme Court has rejected the three-prong analysis in a situation factually similar to Johnson's. In *Amunrud*, the court considered whether a statute suspending a taxi driver's commercial license for failing to pay child support violated his substantive due process rights. 158 Wn.2d at 214-15 The court determined that the right to pursue a profession was a non-fundamental right; accordingly, it applied rational basis review. *Amunrud*, 158 Wn.2d at 220. Under this standard, the court found that there was a rational relationship between license suspension and the state's interest in enforcing child support orders. *Amunrud*, 158 Wn.2d at 224. The court held that, as long as the statute was subject to rational basis review, it would not consider whether the statute was unduly oppressive, reiterating that the proper test was whether "the law bears a reasonable relationship to a legitimate state interest." *Amunrud*, 158 Wn.2d at 226. The court explained that the unduly oppressive prong, most often applied in land

9

use cases, has limited applicability even in those cases and is not appropriately considered in cases where the statute "'regulates only the activity which is directly responsible for the harm.'" *Amunrud*, 158 Wn.2d at 226 n.5 (quoting *Weden v. San Juan County*, 135 Wn.2d 678, 707, 958 P.2d 273 (1998)). Significantly, the court took an expansive view of whether the regulated activity is responsible for the harm, since driving a taxi does not cause the evils of delinquent child support. Instead, the Supreme Court's focus was on whether the statute would provide an incentive to remedy the problems that Amunrud had a hand in creating.

This case is governed by *Amunrud*. If the unduly burdensome test does not apply even with the tenuous connection between taxi driving and child support in *Amunrud*, then it will not apply to the much more direct connection here. In this case, the legislature limited entry into the coastal crab fishery because it found "that the commercial crab fishery in coastal . . . waters is overcapitalized," and RCW 77.70.360 regulates only those parties directly responsible for the overcapitalization—commercial crab fishermen. LAWS OF 1994 ch. 260, § 1. Therefore, we do not engage in the unduly oppressive analysis because the statute does not "require an individual 'to shoulder an economic burden, which in justice and fairness the public should rightfully bear.'" *Weden*, 135 Wn.2d at 706 (quoting *Orion Corp. v. State*, 109 Wn.2d 621, 648-49, 747 P.2d 1062 (1987)).

Johnson argues that even if the unduly oppressive prong does not apply, RCW 77.70.360 still violates substantive due process because it is not reasonably necessary to achieve fishery management goals. "[I]n determining whether a particular statute is reasonable, we must conclude only that there is a rational connection between the purpose of the statute and the method the statute uses to accomplish that purpose." *State ex rel. Faulk v. CSG Job Ctr.*, 117 Wn.2d 493, 506, 816 P.2d 725 (1991). Johnson contends that RCW 79.70.360 uses means that

10

are not reasonably necessary to achieve fishery management. But as we discussed above, all that is required is present here: a rational connection between the purpose of the statute—coastal crab fishery management—and the method—limiting entry into the fishery.

We reject Johnson's argument that the three-prong test applies in this instance. We hold that rational basis review applies and that RCW 77.70.360 is rationally related to fishery management. Accordingly, Johnson's due process claim fails.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## I. STATUTORY CONSTRUCTION

Johnson next argues that the Department erroneously interpreted RCW 77.70.360 to provide that his failure to timely renew his license in 2007 resulted in his license permanently expiring. The Department did not err because RCW 77.70.360 requires a person to have "held" a license in the previous year in order to be eligible for renewal, and Johnson did not hold a license in 2007.

We review a question of statutory interpretation de novo. *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 497, 210 P.3d 308 (2009). In doing so, we give effect to the statute's plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We discern plain meaning from the ordinary meaning of the language at issue. *Campbell & Gwinn*, 146 Wn.2d at 11. If a term is undefined in the statute, we look to the statute's purpose, context, and subject matter. *Retail Store Emps. Union, Local 1001 v. Wash. Surveying & Rating Bureau*, 87 Wn.2d 887, 898, 558 P.2d 215 (1976). We may also use

the dictionary to discern the plain meaning of an undefined term. *Estate of Haselwood*, 166 Wn.2d at 498.

RCW 77.70.360 states that the Department "shall issue no new Dungeness crab-coastal fishery licenses after December 31, 1995. A person may renew an existing license only if the person *held* the license sought to be renewed during the previous year, . . . and if the person has not subsequently transferred the license to another person." (Emphasis added). The Department's interpretation is that a person may renew his license only if he possessed a valid, unexpired license issued for the previous year; therefore, Johnson could not renew his license in 2008 because he did not hold a valid license in 2007. In contrast, Johnson contends that his license was permanent and that a person may hold a license even if it is expired.

Here, the statute's plain meaning and the word "held" is consistent with the Department's "renew-it-or-lose-it" interpretation. Response Br. at 18. The statute allows a person to renew his license only if he "held" the license in the previous year. "Hold" means "to retain in one's keeping" or to "have" or "possess." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1078 (2002). Johnson did not hold a license in 2007. A license is "a right or permission granted in accordance with law by a competent authority to engage in some business or occupation, to do some act, or to engage in some transaction which but for such license would be unlawful." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1304 (2002). "A commercial license issued under this chapter permits the license holder to engage in the activity for which the license is issued," in this case, coastal crab fishing. RCW 77.65.070(1). By Johnson's own admission, his failure to renew his license in 2007 meant that he did not hold the right to fish for Dungeness crab during that year; he merely held the right to apply for renewal during 2007. This right is not

12

the same as an existing license. Therefore, Johnson did not hold a license in 2007, and he did not meet the renewal requirements under RCW 77.70.360 for 2008 or any subsequent year.

The Department's construction is consistent with the legislature's stated purpose. When the legislature limited entry to the Dungeness crab coastal fishery and enacted what is now RCW 77.70.360, it stated that its purpose in doing so was to "protect the livelihood of Washington crab fishers who have historically and continuously participated in the coastal crab fishery." LAWS OF 1994, ch. 260, § 1. To that end, the legislature sought, among other things, "to reduce the number of fishers taking crab in coastal waters . . . [and] to limit the number of future licenses." LAWS OF 1994, ch. 260, § 1. The Department's construction of RCW 77.70.360 furthers this purpose by limiting Dungeness crab coastal licenses to those fishers who annually renew their licenses. This protects those who have "historically and *continuously*" participated in the coastal crab fishery by reducing the number of fishers: those who do not continuously renew and use their licenses lose them. LAWS OF 1994, ch. 260, § 1 (emphasis added).

Additionally, Johnson's construction of the statute is not consistent with the statutory scheme. RCW 77.70.360 and RCW 77.70.020 provide exceptions to the requirement that a person can renew a license only if he held the license in the previous year. These statutes allow a person to renew his license if he did not hold one in the previous year because of a suspension or because there was no harvest opportunity. RCW 77.70.360; RCW 77.70.020. If a person could renew an expired license at any time, as Johnson suggests, these provisions would be unnecessary.

13

Further, Johnson's argument that his license was permanent and, therefore, he was not required to renew it, is not persuasive in the context of the statutory scheme. In its letter informing Johnson that he qualified for a coastal crab license, the Department referred to his license as "permanent." RCW 77.70.280, the statute limiting licenses for the coastal crab fishery, lists two types of licenses: Dungeness crab-coastal fishery licenses and Dungeness crab-coastal class B fishery licenses, which expired on December 31, 1999, and could not be renewed thereafter. In this context, the word "permanent" distinguishes between permits that may be annually renewed and class B permits that expired automatically on December 31, 1999. There is no evidence that the Department used "permanent" to mean that the license did not have to be renewed. In fact, annual renewal is necessary under RCW 77.65.070, which states that commercial licenses expire on December 31 of the year for which they are issued. Further, Johnson was aware of the necessity of renewing his license because the Department mailed annual renewal reminders and he renewed it annually from 1995 until 2007.

## II. VAGUENESS

Johnson next argues that RCW 77.65.030, 77.65.070, and 77.70.360 are all both individually and collectively unconstitutionally vague because they do not provide unambiguous notice to license holders that their licenses could be permanently revoked if they fail to renew them. These statutes are not unconstitutionally vague because an ordinary person would understand from the statutes when a license expires and that a valid license is required for renewal under RCW 77.70.360.

We review a statute's constitutionality de novo. *Putman v. Wenatchee Valley Med. Ctr.*, 166 Wn.2d 974, 978, 216 P.3d 374 (2009). We presume that statutes are constitutional, and one who challenges a statute as unconstitutionally vague must prove vagueness beyond a reasonable

doubt. *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991). For statutes not involving First Amendment rights, we evaluate the vagueness challenge by examining the statute as applied under the particular facts of the case. *City of Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990). A statute is unconstitutionally vague if its terms are "so vague that persons of common intelligence must guess at its meaning and differ as to its application." *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986). This does not require impossible standards of specificity or absolute agreement. *Douglass*, 115 Wn.2d at 179.

RCW 77.65.030, 77.65.070, and 77.70.360 are not unconstitutionally vague either individually or collectively. RCW 77.65.070(3) states "commercial licenses and permits issued under this chapter expire at midnight on December 31st of the calendar year for which they are issued." An ordinary person in Johnson's situation would understand this to mean that a 2006 license expires on December 31, 2006. RCW 77.65.030 states, "The application deadline for a commercial license or permit established in this chapter is December 31st of the calendar year for which the license or permit is sought." An ordinary person in Johnson's situation would understand this to mean that he has until December 31, 2007, to renew a 2007 license. RCW 77.70.360 states, "A person may renew an existing license only if the person held the license sought to be renewed during the previous year." An ordinary person would understand this to mean that, in order to renew a license in 2008, that person must have held a license to fish in 2007. As we discussed above, a license is the right to take crab from the coastal fishery. A person is allowed to do this only if they applied for renewal. An ordinary person reading these statutes together would understand that a person who failed to timely renew a license in 2007 would not have held a license in 2007 and would not be eligible to apply for renewal in 2008 under RCW 77.70.360.

15

III.   EQUITABLE ESTOPPEL

Finally, Johnson argues that the Department was equitably estopped from denying his license renewal application. Johnson's claim is based on three of the Department's actions: (1) a 1995 letter from the Department informing him that he qualified for a "permanent" Dungeness crab coastal fishery license, (2) a 2007 phone conversation with the Department regarding vessel designations, and (3) the Department's license renewal reminders. CP at 115. Because the Department did not make any statements inconsistent with its interpretation of RCW 77.70.360, this argument fails.

A party asserting equitable estoppel against the government must prove five elements by clear, cogent, and convincing evidence: (1) a statement, admission, or act by the government that is inconsistent with its later claims; (2) the asserting party's reliance on the government's statements or acts; (3) injury to the asserting party if the government were allowed to repudiate its prior statement or action; (4) estoppel is necessary to prevent a manifest injustice; and (5) estoppel will not impair governmental functions. *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 887, 154 P.3d 891 (2007). Inaction alone does not constitute an inconsistent statement, admission, or act. *Pioneer Nat'l Title Ins. Co. v. State*, 39 Wn. App. 758, 761, 695 P.2d 996 (1985).

Johnson first argues that the Department "misrepresented" his license when it told him that it was granting him a "permanent" license. Opening Br. at 43. In a 1995 letter informing Johnson that he qualified for a limited entry Dungeness crab coastal fishery license, the Department twice referred to his license as "permanent." CP at 115. But, the Department did not use "permanent" to mean Johnson never had to renew his license. The Department used this term to distinguish Johnson's license from class B licenses, which expired on December 31,

16

1999, and could not be renewed thereafter. RCW 77.70.280(4). Thus, nothing in the letter was inconsistent with the Department's position that licenses must be renewed annually or they would expire.

Johnson next argues that the Department gave him incorrect information during phone calls regarding vessel designation. In the fall of 2007, Johnson called the Department to ask about designating a different vessel under his license. He does not present any evidence that the conversation included a discussion on license renewal or the consequences of failing to renew on time. Because he failed to prove that the Department made inconsistent statements regarding license renewal, equitable estoppel does not apply to this action.

Lastly, Johnson argues that the Department is equitably estopped from denying his license because he did not receive a 2007 renewal reminder and, even if he had, the reminder did not state the consequences of failing to timely renew his license. This argument fails because Johnson must show that the Department made *inconsistent* statements, and all he is arguing here is that the Department failed to make *any* statements in the reminder regarding the consequences of failing to renew. Because Johnson failed to provide evidence of inconsistent statements, his equitable estoppel argument fails.

IV.    ATTORNEY FEES

Johnson argues that he is entitled to attorney fees and costs under RCW 4.84.350 and RAP 18.1. RCW 4.84.350 requires us to award attorney fees and costs to a party that prevails in a judicial review of an agency action. Johnson does not prevail; therefore, he is not entitled to attorney fees.

We reverse the trial court's order setting aside the Department's order and affirm the Department.

_____
Penoyar, J.

We concur:

_____
Worswick, C.J.

_____
Bjorgen, J.