WILLIAMS, Circuit Judge,
concurring in part and dissenting in part:
Although I agree with much of the majority opinion, I have a fundamental disagreement with the analysis employed in Part III. Because I am convinced that Doe’s legitimate expectation of privacy in his drug treatment center records needed to be clearly established at the time of Broderick’s search in order for the defense of qualified immunity to be unavailable, and because I am further convinced that such an expectation was not clearly established, I respectfully dissent from the majority’s conclusion that BroderiCk is not entitled to qualified immunity.
I.
As the majority recognizes in Part II.B of its opinion, a determination that police conduct violates one’s Fourth Amendment right to be free from unreasonable searches requires an affirmative answer to two subordinate questions. First, did the individual “seeking refuge under the Fourth Amendment ‘ha[ve] a legitimate expectation of privacy in the invaded place’”? Ante at 450 (quoting Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Second, did the search fail to comply with the warrant requirement or an exception thereto? See ante at 451. Although the first question was once considered a question only of “standing,” the Supreme Court has long held that whether one has a legitimate expectation of privacy in the invaded area is a question “more properly subsumed under substantive Fourth Amendment doctrine.” Rakas, 439 U.S. at 139, 99 S.Ct. 421; see also Rawlings v. Kentucky, 448 U.S. 98, 104-06, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (confirming that after Rakas there is no longer any separate standing inquiry). In Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), the Supreme Court clearly articulated the concept:
The Fourth Amendment protects legitimate expectations of privacy rather than simply places. If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no “search” subject to the Warrant clause. The threshold question, then, is whether an individual has a legitimate expectation of privacy in the [invaded place].
Id. at 771, 103 S.Ct. 3319 (internal citations omitted).
In addition, as alluded to in this quoted passage from Andreas, the Fourth Amendment serves to protect individual rights, and, therefore, a Fourth Amendment violation is inextricably tied to the specific individual who is alleging the violation. See Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (noting that the Fourth Amendment’s language “indicates that [it] is a personal right that must be invoked by an individual”). In other words, there is no such thing as a Fourth Amendment violation “in the air”; only when, the individual “seeking refuge under the Fourth Amendment.‘has a legitimate expectation of privacy in the invaded place’ or the item seized,” ante at 450 (quoting Rakas, 439 U.S. at 143, 99 S.Ct. 421), can a colorable Fourth Amendment claim, or, as here, a § 1983 claim premised upon a Fourth Amendment violation, exist. Without such an individual interest; no protectable Fourth Amendment interest is implicated.
These principles illuminating the contours of the Fourth Amendment are well settled, and, as I have noted, the majority correctly adheres to them in considering whether Doe has alleged a violation of his Fourth Amendment rights. See ante Part II.B.l. As the Supreme Court has instructed, courts must first determine whether a § 1983 plaintiff has alleged a violation of his constitutional or statutory rights at all, before considering whether *458 those rights were clearly established so as to deprive an offending officer of a qualified immunity defense. See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Like the majority, I agree that, as a matter of first impression, Doe has properly asserted a violation of his Fourth Amendment rights.[1] As I discuss below, however, I do not believe that Doe’s Fourth Amendment right to be free from an unreasonable search of his drug treatment center records was clearly established at the time of Detective Broderick’s search.
II.
After relying upon the well-settled principle that a search violates the Fourth Amendment only when (1) the individual asserting the claim has a legitimate expectation of privacy in the invaded area and (2) the search runs afoul of the requirements of the Warrant Clause, the majority proceeds to abandon this two-part inquiry in analyzing whether Doe’s rights were clearly established in Part III of its opinion. Instead of applying this same framework, the majority works under the premise that whether Doe’s legitimate expectation of privacy in his records was clearly established is inconsequential. Because it was clear in August 1998 that police officers could not search “private areas” without a warrant supported by probable cause, the majority concludes that Detective Broderick cannot be afforded qualified immunity. See ante at 455. The majority’s approach thus frames the issue in such a way that it completely ignores whether the answer to “the threshold question” was clear. See Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). After skipping past this essential step in Fourth Amendment analysis, the majority goes on to assume that the area was private and then addresses the very general question of whether Broderick needed probable cause to search an area in which someone might have a legitimate expectation of privacy. The majority’s error in declining to consider whether Doe’s legitimate expectation of privacy was clearly established is underscored by this level of extreme generality at which the majority is forced to couch its inquiry.
As the Supreme Court’s and this Circuit’s precedents make clear, “[i]n analyzing the applicability of a qualified immunity defense, we must first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity.” Edwards v. City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir.1999) (citing Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Eleventh Circuit has further explained this particularity principle in a manner that is especially prescient in light of the majority’s approach in this case:
[Cjourts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract “rights”.... The line is not to *459 be found in abstractions — to act reasonably, to act with probable cause, and so forth — but in studying how these abstractions have been applied in concrete circumstances. '
Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc) (internal quotation marks omitted) (emphasis added). In this case, however, the majority does nothing more in Part III of its opinion than state the unremarkable proposition that it was clearly established that police officers must act with probable cause in searching private areas.[2]
In contrast to the majority’s approach, I maintain that the particular right that must be clearly established to defeat Bro-derick’s qualified immunity defense is the same as the particular right at issue in considering whether Doe has alleged a Fourth Amendment violation at all. That is, in answering the two distinct questions that Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), instructs us to determine, the actual right at issue remains the same and the majority’s characterization of the right in Part III should have traced the explanation of the right it provided in Part II.B.[3] The question in Part III of the majority opinion should have been whether it was clearly established that a patient has the right to be free from a search of his records kept at a drug treatment center covered by § 290dd-2, in the absence of probable cause. Nevertheless, the majority insists that “Detective Broderick cannot cloak his clearly unconstitutional conduct with qualified immunity simply because a question may have existed as to whether Doe, in particular, had a legitimate expectation of privacy in his methadone treatment records.”[4] Ante at 455. Because Broderick’s conduct would not have been unconstitutional had Doe failed to show that he had a legitimate expectation of privacy in his rec *460 ords, I simply cannot understand how Bro-derick’s conduct could have been “clearly unconstitutional” without the supporting conclusion that Doe’s legitimate expectation of privacy was itself “clear.”
Notably, the majority cites no case in support of its novel approach, in which it disregards a crucial substantive aspect of Doe’s Fourth Amendment rights[5] while determining that those rights were clearly established. In contrast, at least one pri- or case from this Court directly supports (if not mandates) application of the fairly modest precept that if an individual’s expectation of privacy in an area searched is not clearly established, then an officer is entitled to qualified immunity for his conduct. In Tarantino v. Baker, 825 F.2d 772 (4th Cir.1987), we considered the question of whether a police officer was entitled to qualified immunity in a case in which the officer, without a search warrant, peered through cracks in the wall of a building to confirm an anonymous tip that the building’s occupant, Tarantino, was growing marijuana plants. See id. at 773. In that case, a district court originally suppressed evidence stemming from this “search” and the Government did not challenge the suppression on appeal, opting instead to drop its case. See id. After the charges were dropped against Tarantino, however, he brought a § 1983 claim against the police officer, alleging that the officer had violated his Fourth Amendment rights. See id. at 773-74. We recognized that “[ujnless Tarantino had a ‘reasonable expectation of privacy’ in the interior of Ms marijuana storage facility which was clear as a matter of law, [the searching officer] cannot be liable for damages for looking inside without a warrant.” Id. at 775. We concluded that because Tarantino failed to demonstrate that he had a clearly established legitimate expectation of privacy in the invaded area, the officer did not “violate! ] a ‘clearly established’ constitutional standard” and was thus entitled to qualified immunity. See id. at 779. I see no principled manner in which to distinguish Tarantino from this case.[6] In Tarantino, despite the officer’s failure to obtain a warrant before looking inside the building, we rested our analysis on the fact that Tarantino’s legitimate expectation of privacy in the area was not clearly established. Similarly, although Detective Broderick failed to obtain a warrant supported by probable cause in this case, I believe that we must consider whether Doe’s legitimate expectation of privacy in the area searched was clearly established before we can determine that Broderick violated a clearly established constitutional standard.[7]
*461 III.
In my view, Doe did not have a clearly established legitimate expectation of privacy in his drug treatment center records. As the district court acknowledged, it was at the very least “arguably not clearly established under existing law at the time of Broderick’s search” that his conduct violated Doe’s Fourth Amendment rights.[8] (J.A. at 539.) No court has ever held that a patient in Doe’s position has a legitimate expectation of privacy in his drug treatment center records based upon § 290dd-2. Nor am I aware of any decision from the United States Supreme Court, this Court, a federal district court in Virginia, or the Supreme Court of Virginia that has held that patients in a more general sense have a legitimate expectation of privacy in their medical records. Cf. Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir.1999) (“In determining whether a right was clearly established at the time of the claimed violation, courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose.” (alteration in original) (internal quotation marks omitted)). Moreover, had Detective Broderick perused the case law from other states and federal courts of appeals he would have found some decisions strongly suggesting that patients in Doe’s position would not have a protectable Fourth Amendment interest in their medical files. See, e.g., Young v. Murphy, 90 F.3d 1225, 1236 (7th Cir.1996) (concluding that a nursing home patient failed to assert a violation of his clearly established Fourth Amendment rights based upon state examination of his records); United States v. Burzynski Cancer Research Inst., 819 F.2d 1301, 1311 (5th Cir.1987) (determining that Texas’s physician-patient privilege failed to provide patients with a legitimate expectation *462 of privacy in the medical records maintained by their doctor sufficient to challenge the search and seizure of the records); State v. Guido, 698 A.2d 729, 733-34 (R.I.1997) (holding that a patient had no legitimate expectation of privacy in his medical records kept at hospital). In light of the utter absence of case law suggesting that a patient at a drug treatment center covered by § 290dd-2 has a legitimate expectation of privacy in his records, Doe’s expectation was in no way clearly established.
IV.
When we review claims of qualified immunity, the Supreme Court has instructed us to first determine whether the plaintiff has alleged a deprivation of a constitutional right at all and then to determine whether that right was clearly established at the time of the conduct in question. See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Therefore, just as it is essential for Doe to demonstrate that he had a legitimate expectation of privacy in his drug treatment center records before we can conclude that he alleged a violation of his Fourth Amendment rights at all, so, too, is it necessary to show that such an expectation was clearly established at the time of Bro-derick’s conduct before we can conclude that Broderick is not entitled to the defense of qualified immunity. Because Doe did not have a clearly established legitimate expectation of privacy in his drug treatment center records, I would hold that Detective Broderick is entitled to a defense of qualified immunity in this case. Accordingly, I respectfully dissent from Part III of the majority opinion denying Detective Broderick’s qualified immunity defense.

. For Fourth Amendment purposes, a "private area” means an area in which a particular person has a legitimate expectation of privacy. The majority discusses a number of cases demonstrating that police searches of office spaces, commercial premises, and even medical clinics have been held to violate the Fourth Amendment. See ante at 453. These cases are inapposite to the issue here. "[T]he Fourth Amendment protects people, not places.” Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). While slightly interesting, the fact that the search at issue here occurred in the same kind of place as other unconstitutional searches lacks any legal significance. In O’Connor v. Ortega, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), for example, the Supreme Court noted that employees "may” have a legitimate expectation of privacy in their workplace sufficient to trigger Fourth Amendment protections, but cautioned that whether an employee has such a protectable interest is not a foregone conclusion in light of varying workplace environments. See id. at 716-18, 107 S.Ct. 1492. Unless someone in particular has a legitimate expectation of privacy in the invaded area, that area is not a "private area” and no Fourth Amendment violation can occur. Therefore, as I discuss below, because Doe’s legitimate expectation of privacy in his drug treatment center records was not clearly established at the time of Detective Broderick's conduct, it was not clear that Detective Broderick was intruding upon a “private area” for Fourth Amendment purposes.

. Indeed, the Supreme Court stated the proper analysis quite plainly in Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999): "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.’” Id. at 609, 119 S.Ct. 1692 (quoting Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (emphasis added)).

. It is worth noting that there is no evidence in the record that anyone other than Doe had a legitimate expectation of privacy in the invaded area. The majority implies that it is clear that someone besides Doe, perhaps a clinic employee, had a legitimate expectation of privacy in the records, but there is simply no way for us to determine that based upon the record. Again, the Supreme Court’s opinion in O’Connor makes plain that one’s status as an employee does not automatically provide him with a Fourth Amendment interest in all areas of the workplace. See O'Connor, 480 U.S. at 716-18, 107 S.Ct. 1492.

. Again, as the Supreme Court made clear in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the question of whether the individual seeking protection under the Fourth Amendment had a legitimate expectation of privacy in the area searched is one of "substantive Fourth Amendment doctrine.” Id. at 139, 99 S.Ct. 421.

. I do not find the majority’s attempt to distinguish Tarantino v. Baker, 825 F.2d 772 (4th Cir.1987), particularly persuasive. See ante at 455 n. 6. Just as the law was unsettled concerning the expectation of privacy of a commercial building’s occupant at the time of the police officer's conduct at issue in Tarantino, so, too, was the law unsettled concerning the expectation of privacy that a drug treatment center patient possesses in his records at the time of Broderick’s conduct. See infra Part III.

.Other courts have applied similar frameworks in analyzing qualified immunity defenses and have concluded that the defense is available if it was not clear that the conduct constituted a "search” within the meaning of the Fourth Amendment in that the individual's legitimate expectation of privacy in the area searched was not clear. See B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1266, 1268 (9th Cir.1999) (holding that although the Government conduct constituted a search because it "infringed [the plaintiff’s] reasonable expectation of privacy,” the defendants were entitled to qualified immunity because at the time of the conduct "it was not clearly established that the [conduct] constituted a search”); D'Aguanno v. Gallagher, 50 F.3d 877, 880 (11th Cir.1995) (holding that defendants were entitled to qualified immunity for allegedly violating plaintiffs' Fourth Amendment rights when it was not clear that *461 plaintiffs had an expectation of privacy that society was prepared to recognize as reasonable); Shields v. Burge, 874 F.2d 1201, 1205 (7th Cir.1989) (granting qualified immunity in part because at the time of the conduct “it was not clear whether [an employee’s reasonable expectation of privacy against police intrusions in the workplace] carried over to work-related intrusions by superiors”); see also Ortega v. O’Connor, 146 F.3d 1149, 1157-58 (9th Cir.1998) (considering "[fjirst” whether the § 1983 plaintiffs' "reasonable expectation of privacy in their private offices, desks, and file cabinets” was clearly established before proceeding to the second -question of whether it was clearly established that the search was unreasonable).

. The majority notes this aspect of the district court's opinion in which the district court expressly doubts that Broderick’s conduct violated any clearly established Fourth Amendment right possessed by Doe, but quickly dismisses any significance in this language on the basis that the district court ultimately concluded that qualified immunity was not available to Broderick, and, therefore, the district court must have actually deemed Doe’s Fourth Amendment rights clearly established. See ante at 450 (noting that despite the district court’s indication that the right was “arguably” not clearly established, "[njevertheless, the district court apparently concluded that this right was clearly established because the court ultimately denied Detective Broderick’s motion for summary judgment”); ante at 446 ("The district court also apparently concluded, but did not expressly state, that Detective Broderick’s conduct violated. clearly established Fourth Amendment law because the court ultimately denied Detective Broderick’s motion for summary judgment based on qualified immunity.”). Contrary to the majority, my reading of the district court's opinion denying Broderick's motion for summary judgment indicates that the district court based its denial upon its belief that Broderick had violated Doe’s clearly established statutory rights, not that Broderick had violated Doe’s clearly established Fourth Amendment rights. The district court held that Broderick violated Doe’s statutory rights under § 290dd-2 and that because this law was "on the books,” it was clearly established, thereby depriving Broderick of a qualified immunity defense. (J.A. at 539-40.) As the majority holds in Part II.A of its opinion, however, the district court erred in its conclusion that § 290dd-2 creates a statutory right cognizable under § 1983. My point is simply that, contrary to the majority’s suggestion, the district court actually appears to have agreed that Broder-ick did not violate Doe’s clearly established Fourth Amendment rights and that this agreement can most easily be reconciled with its ultimate holding by noting the statutory-right basis for its decision.