**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1854**

MICHAEL BILLIONI,

       Plaintiff - Appellee,

    v.

SHERIFF BRUCE BRYANT, individually and in his official capacity as York
County Sheriff,

       Defendant - Appellant,

    and

YORK COUNTY; YORK COUNTY DETENTION CENTER; YORK COUNTY
SHERIFFS OFFICE,

       Defendants,

WCNC-TV INC,

       Respondent,

CONNIE MCMILLAN; CHRISTOPHER PENLAND; JAMES MOORE;
LINDSAY HENSON; CAROL SUTTON; FRANCINE WEYERS; JAMES
BRACKETT,

       Intervenors.

Appeal from the United States District Court for the District of South Carolina, at Rock
Hill.  J. Michelle Childs, District Judge.  (0:14-cv-03060-JMC)

Argued: September 27, 2018                    Decided: January 2, 2019

---

Before AGEE and FLOYD, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Remanded by unpublished per curiam opinion.

---

**ARGUED:** Christopher Wofford Johnson, GIGNILLIAT, SAVITZ & BETTIS, Columbia, South Carolina, for Appellant. Shon Hopwood, GEORGETOWN LAW APPELLATE COURTS IMMERSION CLINIC, Washington, D.C., for Appellee. **ON BRIEF:** Jennifer Munter Stark, JENNIFER MUNTER STARK LAW OFFICE, Mt. Pleasant, South Carolina; Marybeth Mullaney, MULLANEY LAW FIRM, Mt. Pleasant, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Correctional officers at York County Detention Center (YCDC) strapped Joshua Grose into a restraint chair and watched as he was beaten by an officer with a history of prisoner abuse. Grose died the next day. Michael Billioni, a supervisor at YCDC, saw surveillance video of the beating. He told his wife, who worked at a local news station. When news of the video broke, YCDC conducted an internal investigation into who had leaked it. Billioni confessed, and YCDC fired him. Billioni then sued Bruce Bryant, the York County Sheriff, alleging that Bryant had fired him in retaliation for speech protected by the First Amendment. Sheriff Bryant moved for summary judgment, arguing that he was entitled to qualified immunity. The district court denied his motion, and Sheriff Bryant appealed.[1]

We now hold that under *Johnson v. Jones*, 515 U.S. 304 (1995), and *Winfield v. Bass*, 106 F.3d 525 (4th Cir. 1997) (en banc), this Court has jurisdiction over Sheriff Bryant's claim that there was no violation of "clearly established" law. But we remand to the district court to use the correct legal standard to determine whether Billioni's speech was protected under the First Amendment and thus do not reach Sheriff Bryant's qualified immunity argument.

---

[1] "Given that this appeal arises from the district court's denial of summary judgment, we review each issue de novo, viewing all facts and reasonable inferences therefrom in favor of [Billioni], as the non-moving party." *Cannon v. Village of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018).

I.

In the early morning hours of October 20, 2013, Grose was strapped to a prisoner restraint chair that rendered him completely immobile while Officer James Moore punched him multiple times in the head. After Moore's brutal assault, other correctional officers, who had watched the attack, tased Grose in "drive stun" mode and placed his head into a football helmet strapped to the restraint chair. Grose died a few hours later. Just months before, Moore had been the target of an internal investigation at YCDC and ordered by Sheriff Bryant to undergo psychological evaluation for repeatedly striking the head and neck of another inmate in a restraint chair.

Later that day, Trent Faris, a public information officer for the York County Sheriff's Office (YCSO), held a press conference about Grose's death. He stated that Grose had been placed in a restraining chair for his own safety because he had been "very, very combative," and that Grose died as a result of injuries that he gave himself by hitting his head on the back of the chair. J.A. 987. Faris said nothing about Moore punching Grose 12 times in the head. When asked by a reporter whether officers would face disciplinary action for Grose's death, Faris answered "[a]ll our officers, detention officers, did exactly what they were supposed to do last night." J.A. 991.

At the time of Grose's death, Billioni was a Master Control Specialist at YCDC, a position that gave him access to the correctional facility's video surveillance system. Billioni heard Faris's statement while off-duty. At work the next day—October 21, 2013—he decided to watch the surveillance video of the incident. What he saw disturbed him. Later that day, Billioni told his wife, a research analyst for WCNC, the NBC

4

affiliate in Charlotte, North Carolina, about the existence and contents of the video. Billioni's wife contacted Stuart Watson, an investigative reporter at WCNC, about the contradictions between the video and the YCSO press conference. Watson subsequently filed a request for the video pursuant to the Freedom of Information Act and contacted the YCSO's general counsel about the circumstances surrounding Grose's death.

On October 22, 2013, Sheriff Bryant held a meeting to determine whether there was a witness who knew something about Grose's death that had not been publicly reported. Sheriff Bryant also called in the State Law Enforcement Division (SLED), the South Carolina agency that conducts internal investigations for law enforcement agencies. YCDC administrators James Arwood and Richard Martin began their own internal investigation by interviewing Billioni, because they knew that his wife worked at WCNC. During the interview, Billioni admitted to watching the video but lied about describing it to his wife. The next day, Billioni sent Arwood and Martin an email admitting that he had told his wife—who had subsequently told WCNC reporters—about the video.

On October 25, 2013, Billioni gave a statement to SLED agents in which he admitted leaking the existence and contents of the surveillance video to his wife. Later that day, Arwood and Martin gave Billioni a choice: either resign or be fired. He chose the latter.

Per its standard procedure, YCDC provided Billioni with a notice of termination. The notice stated that Billioni was terminated because of a violation of YCSO Policy 300:16 Code of Ethics, VIII; Employee Rules of Conduct, 16; and VII Confidential

5

Information. The relevant employee rule of conduct states that "[e]mployees are to be respectful of other employees, employees of other agencies or departments, and the public. Employees are not to participate in rumors and gossip about other persons, cause discontent in the department. Problems are to be addressed in the appropriate manner through the proper chain of command." J.A. 1037–38. The YCSO Confidentiality Policy states that "[i]nmate and employee records are considered confidential information. No employee is to divulge information pertaining to inmates and/or employees of the Detention Center except for official purposes and then only authorized persons and agencies with official need to know. All employees will treat all Detention Center communications and business as confidential." J.A. 1140. YCDC later entered substantially the same explanation for Billioni's termination in NET-101, an online tool that YCDC used for responding to unemployment claims. There, YCDC stated that Billioni was terminated for "[u]nsatisfactory [w]ork/[p]erformance" based on a "[v]iolation of [the] [c]ode of [e]thics" and the YCSO's Confidentiality Policy. J.A. 1232. In response to the standard question in NET-101 asking how Billioni's performance caused "a loss to the employer," YCDC answered that Billioni "[h]urt credibility of Sheriff's office – no monetary value." J.A. 1232.

Between learning of Grose's death during the press conference on October 22nd and being terminated on October 25th, Billioni notified the United States Department of Justice that "there was an incident" at YCDC that it "may need to look at." J.A. 200. Specifically, Billioni reported that "an inmate had been punched 12 times in the restraint chair, by an officer who had done this already." *Id.* The Department of Justice contacted

6

Billioni, and the federal agent discussed "several pretty big incidents that have gone on, in that detention center, in the last few years." J.A. 202. Before his termination, Billioni also filed a complaint with the South Carolina Attorney General's Office laying out "that an inmate was struck 12 times by an officer who had been previously disciplined for striking an inmate in a restraint chair." J.A. 205.

On November 12, 2013, YCSO held another press conference. This time, it showed the surveillance video. During this second press conference, WCNC reporter Watson asked Sheriff Bryant why Billioni had been fired. Sheriff Bryant stated, "[T]hat man was terminated, and I believe you know the answer." J.A. 276. Sheriff Bryant then "started to yell" at Watson that "out of all the people in this room, you know the answer to that question." J.A. 276-77. Sheriff Bryant refused to allow Watson to ask any more questions for the remainder of the press conference.

Soon after his termination, Billioni filed suit against Sheriff Bryant, YCDC, York County, and the YCSO alleging various violations of state and federal law. The district court dismissed or granted summary judgment to defendants on all of Billioni's claims but one: a claim of retaliatory discharge in violation of the First Amendment, brought under 42 U.S.C. § 1983.

In denying summary judgment on Billioni's retaliatory-discharge claim, the district court found that there was a factual question whether Billioni (1) was terminated because he lied to the department's internal investigators or (2) because he both told his wife about the video *and* lied about doing so to the internal investigators. The district court found that Billioni's speech was protected under the First Amendment, because

7

Billioni spoke on a matter of public concern and his interest in the speech outweighed "any disruption caused by the internal investigation," and finally that a reasonable jury "could conclude" from the evidence that Billioni's protected speech was a substantial factor in his firing. J.A. 1450–51. That being so, the district court rejected Bryant's assertion of qualified immunity. The court reasoned that at the time of Billioni's termination, it was clearly established law in the Fourth Circuit that an employee's speech about serious governmental misconduct is protected by the First Amendment; thus, if a jury were to conclude that Billioni's discussion of the video with his wife had played a substantial role in his firing, then his termination would have violated clearly established law, and qualified immunity would be inappropriate.

This interlocutory appeal of the district court's denial of qualified immunity followed.

## II.

"We review de novo a district court's decision to deny a summary judgment motion asserting qualified immunity." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015).

## III.

Sheriff Bryant argues that the district court should have granted him summary judgment because he is entitled to qualified immunity as a matter of law. In opposition, Billioni argues that we should dismiss this appeal at the outset for lack of jurisdiction. We begin by addressing Billioni's jurisdictional argument and then move to Sheriff Bryant's substantive qualified immunity argument. We conclude that we have jurisdiction over this case but that we cannot reach the substantive qualified immunity

8

issue. We remand to the district court to use the correct legal standard to determine whether Billioni's speech is protected under the First Amendment.

"The doctrine of qualified immunity protects government officials from liability for violations of constitutional rights that were not clearly established at the time of the challenged conduct." *Iko v. Shreve*, 535 F.3d 225, 233 (4th Cir. 2008). When a defendant in a § 1983 action moves for summary judgment based on qualified immunity, we have jurisdiction over the denial of the motion. *Id.* at 234; *Hensley ex rel. N. Carolina v. Price*, 876 F.3d 573, 579 (4th Cir. 2017). But our jurisdiction is limited. "[W]e may only consider whether, on the undisputed facts and the facts considered in the light most favorable to the plaintiffs, the defendants violated clearly established law." *Hensley*, 876 F.3d at 579. We cannot revisit whether the plaintiff's evidence was sufficient to create a genuine dispute as to material fact. Nor can we second guess the district court's interpretation of the evidence. We must take the facts as the district court took them and determine whether, when all reasonable inferences are drawn in the plaintiff's favor, the facts entitle the defendant to qualified immunity.

Therefore, we must assume that (1) Billioni spoke out about serious government misconduct; (2) his speech violated YCDC's confidentiality policy but did not cause a significant disruption in the department's operation and mission; (3) Billioni lied about his speech during an internal investigation; and (4) that a reasonable jury could infer that Billioni's speech on serious government misconduct was a "substantial factor" in his firing. Using those facts as his starting point, Sheriff Bryant argues that he is entitled to qualified immunity on two grounds. First, he argues that in October 2013, it was not

9

clearly established that the First Amendment protected Billioni's speech, because it was not clearly established that a public employee's interest in speech involving serious government misconduct outweighs the "reasonable apprehension" of disruption caused by the employee's violation of an internal confidentiality policy. Second, he argues that in October 2013, it was not clearly established that firing an employee largely—but not entirely—because of the employee's speech on serious government misconduct violated the First Amendment. Those are legal arguments that do not require us to revisit the evidence or the district court's construal of the facts. Accordingly, we have jurisdiction to address them, and we now turn to their merits.

Officials are entitled to qualified immunity when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is a two-part inquiry. First, "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn. v. Gabbert*, 526 U.S. 286, 290 (1999)). Second, "whether that right was clearly established at the time." *Id.*

Sheriff Bryant argues that he is entitled to qualified immunity because in October 2013, it was not clearly established that Billioni's speech was protected by the First Amendment. Specifically, Sheriff Bryant argues that it was not clearly established that Billioni's interest in speaking on a matter of public concern outweighed any disruption that speech caused to the operation and mission of the YCSO. We hold that the district court applied the incorrect legal standard in determining whether Billioni's speech was

10

protected by the First Amendment, and remand for the district court to apply the correct legal standard as well as to make any further factual findings that may be warranted under that standard.

As early as 1998, we held that an adverse employment action taken in response to a public employee's speech violates the employee's First Amendment rights if (1) "the employee 'was speaking as a citizen upon a matter of public concern' rather than 'as an employee about a matter of personal interest'"; (2) the employee's "interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public"; and (3) the employee's "'speech was a substantial factor' in the employer's decision to take action against him." *Smith v. Gilchrist*, 749 F.3d 302, 308 (4th Cir. 2014) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)).

Under the first prong of the *McVey* test a plaintiff must demonstrate that they were "speaking as a citizen upon a matter of public concern [and not] as an employee about a matter of personal interest." *McVey*, 157 F.3d at 277. The district court found that a reasonable juror could conclude that Billioni's statement to his wife about the surveillance video to be speech on a "matter of public concern," as it involved "allegations of misconduct by public employees possibly causing, or contributing to the death of a man in their custody and control." J.A. 1449–50 (internal citations and quotation marks omitted). We agree. Billioni told his wife about a video that showed the role that an officer's use-of-force played in a man's in-custody death, directly contradicting the YCSO's official statement on the incident. This speech relates to a

11

"matter of political, social, or other concern to the community." *See Connick v. Myers*, 461 U.S. 138, 146 (1983). It is not the kind of "individualized" internal workplace complaints "significant chiefly to the parties involved" that we have declined to find implicate matters of public concern. *Brooks v. Arthur*, 685 F.3d 367, 375–76 (4th Cir. 2012); *see also Stroman v. Colleton Cty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992) (explaining that "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee").

*McVey*'s second prong balances the plaintiff's interest in the speech against the employer's interest in "avoid[ing] disruption of its internal operations." *Berger v. Battaglia*, 779 F.2d 992, 997 (4th Cir. 1985). The district court found that this prong was met because "Sheriff Bryant did not make any showing of disruption within the YCSO due to the statements made by [Billioni] to his wife" and that "any disruption caused by the internal investigation that was conducted by the YCSO" was "clearly outweighed by the public's interest in the disclosure of misconduct or malfeasance." J.A. 1450 (internal citations and quotation marks omitted). However, in conducting this balancing the district court used the incorrect "actual disruption" standard instead of the "reasonable apprehension of disruption" standard. In *Maciarello v. Sumner*, we made clear that courts "do not require the public employer to prove that the employee's speech actually disrupted efficiency, but only that an adverse effect was 'reasonably to be apprehended.'" 973 F.2d 295, 300 (4th Cir. 1992) (quoting *Jurgensen v. Fairfax Cty., Va.*, 745 F.2d 868,

12

879 (4th Cir. 1984)).  By looking to whether Sheriff Bryant made a "showing of disruption within the YCSO" instead of whether Sheriff Bryant made a showing that he reasonably apprehended a disruptive effect from Billioni's speech, the district court committed legal error.  Instead of conducting this fact-intensive balancing in the first instance, we remand to the district court to use the correct legal standard to determine whether the evidence permits a conclusion that a reasonable factfinder could find that Sheriff Bryant reasonably apprehended disruption within the YCSO as a result of Billioni telling his wife about the surveillance video that outweighs Billioni's interest in speaking out about the surveillance video.

Sheriff Bryant contends that because the district court applied the incorrect legal standard for determining whether Billioni's speech was protected under the First Amendment, we should find that he is entitled to qualified immunity.  We decline to do so, as we can only reach Sheriff Bryant's qualified immunity argument after a determination whether Billioni's speech is protected by the First Amendment.[2]

---

[2] Sheriff Bryant also argues that even if Billioni's speech should be accorded First Amendment protection, the district court erred in denying qualified immunity because at the time of Billioni's termination it was not "clearly established law" that an employer could not terminate an employee for protected speech when that speech was a substantial but not exclusive factor in the termination decision.  This argument fails under our precedent.  We reiterate that given the procedural posture of this appeal, we must assume for purposes of appeal that Billioni's discussion of the existence and contents of the surveillance video with his wife was a substantial factor in Sheriff Bryant's decision to terminate him.  The third prong of the *McVey* test asks whether the protected speech was a "substantial factor" in the termination decision, *McVey*, 157 F.3d at 278, making it clear that the mere existence of a credible lawful motive for an employee's termination does not, on its own, shield the employer from liability.  Our recent cases are consistent with this interpretation of *McVey*.  *See Hunter v. Town of Mocksville*, 789 F.3d 389, 395, 399 (Continued)

13

(4th Cir. 2015) (holding that a police chief was not entitled to qualified immunity for terminating officers who reported corruption within the department even where the officers received termination letters that gave independent "performance justifications" for their terminations, including "insubordination," "attitude," and "other conduct unbecoming a Officer,"); *Durham v. Jones*, 737 F.3d 291, 297, 303 (4th Cir. 2013) (holding that sheriff was not entitled to qualified immunity for terminating a deputy sheriff who publicized an incident report that detailed officer-use-of-force even where the record contained independent performance-based justifications for the deputy sheriff's termination including "dissemin[ating] [] departmental information and unbecoming conduct," "failure to obey a lawful order," and "failure to carry out responsibilities in a competent manner").

Sheriff Bryant urges us to abandon our own precedent and instead follow the Eleventh Circuit in finding that where the facts assumed for summary judgment purposes "show mixed motives (lawful and unlawful motivations) and preexisting law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity." *Sherrod v. Johnson*, 667 F.3d 1359, 1364 (11th Cir. 2012) (internal citations and quotation marks omitted). We decline to do so. Such a rule has the practical effect of giving a veneer of legality to those supervisors who give pretextual reasons for termination so long as the record could also support a lawful reason for that termination. And, most saliently, it runs directly contrary to our decisions in *Hunter* and *Durham*.

Of course, this does not mean that the presence of both lawful and unlawful motivations cannot be dispositive in the context of the second prong of the *McVey* test. In *Cannon*, 891 F.3d 489, we considered a series of text messages sent between police officers that were alternately a matter of public concern and "disruptive and insubordinate." *Id.* at 500. We concluded that this combination of messages meant that the officers' interest in First Amendment expression did not outweigh the police department's interest in maintaining order and discipline, such that we reversed the district court's determination that the department was not shielded by qualified immunity from the retaliation claims. *Id.* at 501.

Finally, Sheriff Bryant contends that to the extent that the Court is inclined to rely on the denial of qualified immunity in *Hunter* or in *Durham*, both cases were decided after October 2013 when Billioni was terminated. But what matters is not when the cases were decided, but that the events in both *Hunter* and *Durham* occurred before the events in this case. In both *Hunter* and *Durham* we held that it was "clearly established in the law of this Circuit in September 2009 that an employee's speech about serious governmental misconduct, and certainly not least of all serious misconduct in a law enforcement agency, is protected." *Hunter*, 789 F.3d at 401 (citing *Durham*, 787 F.3d at 303–304). Both cases acknowledge the existence of an already clearly established right.

14

## IV.

We remand to the district court with instructions to apply the correct legal standard to determine whether Billioni's speech is protected under the First Amendment.

*REMANDED*